## MARSEN v. NICHOLS COPPER CO.

(Supreme Court, Appellate Division, Second Department. October 12, 1909.)

1. MASTER AND SERVANT (§ 245*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A servant knew that the slats over a vat containing a hot liquor were loose and slippery. He was directed by the foreman to stand on the slats while painting pipes over the vat, and while doing so he fell into the vat, and was injured. The foreman had no knowledge superior to that of the servant. *Held*, that the servant was not justified in relying on the foreman's assurance of safety, and was guilty of negligence, precluding a recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 781; Dec. Dig. § 245.*]

2. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—SAFE "PLACE" IN WHICH TO WORK.

A vat containing a hot liquor and covered by loose slats is not a "place" within the rule that a master must furnish a safe place, when the same is

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

used by a servant standing on the slats while painting, but the same is. in the nature of a temporary platform.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202; Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 6, pp. 5386, 5387.]

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Queens County.

Action by Joseph Marsen against the Nichols Copper Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed.

The accident happened in a room containing 72 vats each 8 feet long, 4 feet wide, and 4 feet deep, placed end to end, 3 feet apart, in 3 double rows with aisles between them. A hot liquor was discharged into the vats from pipes placed between, and 2½ to 3 feet above the rows of each set. Wood slats 1½ inches wide and 2 to 2½ inches thick were placed an inch apart across the top, and extending 1½ to 2 inches over the edges of the vats, and upon them strips of lead were hung. As the liquor cooled a precipitate was formed on the strips of lead and the sides of the vats. When the precipitation was completed, the liquor was drawn off, the strips of lead were removed, and the precipitate was knocked off and shoveled into trucks. The slats were removed and the precipitate in the vats was shoveled out. The vats were then thoroughly cleaned, the slats with the strips of lead were replaced, and the vats were refilled. The plaintiff had worked in that room a year and a half, assisting in removing the precipitate from the vats and the strips of lead, in cleaning the vats, and in replacing the slats. The slats were not fastened in any way, as he knew.

On the day of the accident, after the slats with the strips of lead had been replaced and the vats filled with the steaming liquor, the plaintiff, pursuant to the direction of the foreman, commenced painting the pipes over the vats, and, to do that, stood upon the slats, as the foreman had done when showing him how to do it. He had worked thus about 20 minutes, when his left leg went into the hot liquor, and was scalded. He testified: "The sticks slipped under me, and I fell in.". After the accident four slats were found with one end resting on the edge of the vat and the other in the liquor. While the plaintiff was painting, the slats were enveloped in the steam from the boiling liquor.

The only question respecting the defendant's negligence submitted to the jury was whether it furnished the plaintiff a safe place in which to work.

Argued before HIRSCHBERG, P. J., and GAYNOR, BURR, RICH, and MILLER, JJ.

Charles C. Nadal (Harold S. Recknagel, on the brief), for appellant. Martin T. Manton, for respondent.

MILLER, J. While it does not distinctly appear how the accident happened, the fair inference is that in taking a step, or perhaps in reaching out to paint the pipes, the plaintiff caused the ends of the slats to slip into the vat. It is contended that in standing upon the slats to show the plaintiff how the work should be done the foreman assured him of the safety of that method. It quite plainly appears that the foreman had to show the plaintiff what to do because the latter could not understand English. However, we may assume that the direction as given by the foreman constituted an assurance of safety. But the foreman had no knowledge superior to that of the plaintiff which the latter was justified in relying upon. As the learned court

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charged the jury, the plaintiff knew as much about the situation as the foreman did. This is not a case where the master or his representative has superior knowledge of the situation, or where a danger may be guarded against by precautions which the servant may assume have been taken. The plaintiff knew that the slats were loose. An ordinary workman would know, as well as the foreman, that, rendered slippery by the steam, they were liable to slide. No assurance by the foreman could justify the plaintiff in disregarding what he knew to be the situation. He was no more justified by the assurance of the 'foreman in doing what he knew to be a negligent act than he would have been in putting his leg into the boiling liquor upon the assurance of the foreman that it was safe to do so. Their knowledge of the situation and of the danger being the same, they are to be judged by the same standard, and, if the foreman was negligent in directing the plaintiff to stand upon the slats, it would seem to follow that the plaintiff was negligent in doing it. Indeed, the foreman might expect the plaintiff to exercise the care required by the situation, and there was nothing about it requiring explanation or instruction. The plaintiff knew that he was standing upon loose slats resting upon the edges of a vat containing boiling liquor. He knew that any pressure not vertical might cause them to slip, and doubtless he could have done the work safely by exercising caution equal to the danger.

Moreover, the doctrine of safe place has no application to the case. We must test this verdict by the rules of the common law, independent of any statute. The room was the place in which to work furnished by the master. The vats and the slats were instrumentalities. Moreover, they were not designed or furnished by the master for the use to which they were put. The foreman was not the master except in the discharge of the master's duties. The case is the same as though a temporary platform had been improvised, and it is plain that in such case the doctrine of safe place would have no application. Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Hahn v. Conried Met. Opera Co., 126 App. Div. 815, 111 N. Y. Supp. 161.

The learned trial justice was of opinion that the case was controlled by the cases of McGovern v. C. V. R. R. Co., 123 N. Y. 280, 25 N. E. 373, and Berry v. Atlantic Storage Co., 50 App. Div. 590, 64 N. Y. Supp. 292. The former case has often been cited, and as often distinguished. In that case the plaintiff's intestate was sent into the bottom of a grain elevator, plainly a place that was unsafe because of the mass of grain clinging to the sides above. The master had superior knowledge of the situation, and could have ascertained the danger and guarded against it—precautions which the servant had a right to assume had been taken. The superintendent in that case was the alter ego of the master because he failed to discharge duties which the master owed. The decision in the Berry Case turned on the point that the hopper box covers, though not originally intended for that purpose, had been adopted by the master without examination as a place which the plaintiff had to occupy to do his work. The accident happened from the breaking of a cleat, and the plaintiff did not know how securely the cover was fastened.

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event.

GAYNOR, BURR, and RICH, JJ., concur.  HIRSCHBERG, P. J., dissents.