THOMAS E. FITZGERALD, Respondent, *v.* NEWTON FALLS PAPER COMPANY, Appellant.

**Master and servant — action against master under Employers' Liability Act — servant must show freedom from contributory negligence.**

Section 202 of the Labor Law (Cons. Laws, ch. 31), relating to the employers' liability, has not relieved the employé of the burden of establishing his freedom from contributory negligence as an essential element of his case.

*Fitzgerald* v. *Newton Falls Paper Co.*, 139 App. Div. 922, reversed.

(Argued December 12, 1911; decided January 16, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 26, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Warnick J. Kernan* for appellant. Plaintiff should have been nonsuited on the ground of his failure to show defendant negligent. (*King* v. *Reid*, 124 App. Div. 121; *Sitts* v. *Waiontha Knitting Co.*, 94 App. Div. 38; *Cobb* v. *Welcher*, 75 Hun, 283.) Plaintiff should have been nonsuited on the ground of his failure to show that he himself was free from any contributory negligence. (*Chisholm* v. *Manhattan Ry. Co.*, 116 App. Div. 320; *Wilson* v. *New York Mills*, 107 App. Div. 99; 113 App. Div. 889; 190 N. Y. 550; *Kenney* v. *Rutland R. R. Co.*, 114 App. Div. 286; *Bauer* v. *Empire State Dairy Co.*, 115 App. Div. 71; *Brenstein* v. *Mattson*, 10 Daly, 336; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628; *Piper* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 224; *Burk* v. *Edison General Electric Co.*, 89 Hun, 498; *Patterson* v. *Hedden & Sons Co.*, 124 N. Y. S. R. 1069; *Galvin* v. *Old Colony R. R. Co.*, 162 Mass. 533.)

*J. C. Dolan* for respondent. The defendant failed to furnish plaintiff with safe and proper access to his work and permitted the passageway used by the plaintiff in going to his work to be left in a dangerous and unsafe condition. (*Simpson* v. *N. Y. R. Co.*, 80 Hun, 414; *Simons* v. *Peters*, 85 Hun, 93; *Freemont* v. *B. & M. R. R. Co.*, 111 App. Div. 831; *Perotta* v. *Richmond Brick Co.*, 123 App. Div. 587; *Ward* v. *Hill*, 125 App. Div. 587; *Glennon* v. *Star Co.*, 130 App. Div. 491; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Eastland* v. *Clark*, 165 N. Y. 420; *Dowd* v. *N. Y., O. & W. R. R. Co.*, 170 N. Y. 459; *Walker* v. *N. F. P. Co.*, 111 App. Div. 19; *Lynch* v. *American Linseed Co.*, 113 App. Div. 503.) The plaintiff, not knowing that the pulley wheel was unguarded and unsafe, was not required to exercise any great degree of care in passing through said passageway. The rule requires caution and care only when the danger is known to the employé, and the question of contributory negligence under the circumstances was clearly one for the jury. (*McGuire* v. *Spence*, 91 N. Y. 303; *Kettle* v. *Turl*, 162 N. Y. 255; *Harrison* v. *N. Y. C. & H. R. R. R. Co.*, 195 N. Y. 86; *Hunt* v. *D. S. P. & P. Co.*, 100 App. Div. 119; *Bausert* v. *Thompson-Starrett Co.*, 126 App. Div. 332; *Inglese* v. *N. Y., N. H. & H. R. R. Co.*, 133 App. Div. 198; *McRickard* v. *Flint*, 114 N. Y. 322; *Feeny* v. *L. I. R. R. Co.*, 116 N. Y. 375; *Kinney* v. *Rutland R. R. Co.*, 114 App. Div. 286.)

Gray, J. The plaintiff brought this action against his employer to recover damages for injuries to his hand and arm; alleged by him to have been caused through the latter's negligence. The defendant was engaged in the manufacture of paper and the particular negligence charged against it is that a passageway used by the plaintiff was rendered unsafe, from being improperly lighted and from certain machinery being improperly guarded. The plaintiff, a young man, had been employed

upwards of three months in the engine room. He was in the habit, as were his fellow-servants, of passing through a large room, filled with machinery, in order to reach the engine room. Early in the morning of the day in question, the plaintiff was proceeding to his work. His way took him, at first, between large paper machines to the end of the room, where, turning to the left, a passage existed to the entrance of the engine room between a number of "cones," or wet machines, on the left hand, and a brick wall on the right hand. This passage, or way, was from six to seven feet in width and some eighty feet in length. About fifteen feet from the turn, and on the right-hand side, was a large revolving pulley wheel having a diameter of seven feet and four inches. This pulley operated a shaft, which crossed the passage at a height of about five feet and a half and furnished the motive power for a number of other cone pulleys necessary to the machines. In front of this large pulley there was a fence, formed by two horizontal lines of iron pipes; one being about eighteen inches and the other four feet from the floor. The plaintiff remembered only the one pipe four feet from the floor; but would not deny that the other was, also, there and that was proved. The morning was dark and the passage was only dimly lighted, at this point, by an electric light, which hung to the left of the passage over the cone pulleys and about ten feet from the floor. Other lights were in this large room; but, according to the plaintiff's evidence, this one light, alone, gave any light to the passage. He testified, and the narrative of the facts is taken from his evidence, that, when he turned to the left to enter this passage, "I started in there and when I got about fifteen feet, I struck my head against the shaft and it knocked me into the revolving pulley. My shoulder struck outside the pulley. My right hand fell in the spoke, or rim, of the wheel and it struck my right hand. I kind of got my right hand in it." No other person witnessed the acci-

dent and that testimony is all upon the subject of the occurrence. There were two other unobstructed ways to reach the engine room, without going through this passage, by passing out of doors, or through another room at the end of the passageway between the paper machines; but the practice of using this somewhat shorter way having been continued so long, we may assume that the defendant assented to it. The trial court denied motions, at the end of the plaintiff's case and of the whole case, to dismiss the complaint on the ground of a failure to show negligence in the defendant, or that the plaintiff was free from contributory negligence, and exception was taken by the defendant. The court submitted to the jury, as the issue presented, whether the defendant had performed its duty by properly lighting the way and by properly guarding the pulley wheel. Although the judgment on the verdict for the plaintiff has been affirmed, the order of the Appellate Division is silent upon the subject of any unanimity in the decision and the question is left open as to the sufficiency of the evidence to make out a case for submission to a jury.

I think that it was error for the trial court to refuse to dismiss the case on the grounds urged by the defendant. The evidence did not tend to establish the neglect of any duty owing by the defendant to its employé in the respects mentioned. Granting, as we must, the right of the plaintiff to use this passageway, there were no conditions to be changed because of this use. The shaft had to be where it was for the operation of the machinery; or, at least, the evidence does not suggest that it might be changed, and whether it was covered, or not, of course, was immaterial. There was a fence of two rails, which guarded the pulley wheel against the contact of those passing along, and, again, the evidence does not show that it could be more effectively guarded, under the circumstances of its situation and use. The accident happened because the shock from striking his head against

the shaft, naturally, threw the plaintiff back. Falling against the pulley wheel, his body was protected, but the extension of his arm caused it to pass through the fence and against the wheel. A solid fence from floor to shaft might, of course, have prevented such an occurrence; but to say such a barrier was practicable is, from the lack of evidence upon the subject, pure guesswork. As to the lighting of the passageway, plaintiff's evidence was that it was "kind of dim," and always was so, and that the electric light did not hang over the passage, but was to one side of it. He does not say that he could not see the shaft, nor his way along, and his only other witness, who testified upon that subject, had been able, an hour before, to perform his work there of oiling the pulleys. Such evidence was insufficient to show neglect on the defendant's part as to furnishing light. There was sufficient light to enable men to work there and if it was dim, the way could be seen, and the plaintiff knew of the shaft and could see it.

But if the evidence might be deemed to admit of a doubt, and to raise a question of fact as to defendant's having performed its whole duty towards the plaintiff, in the respects discussed, there can be no reasonable doubt, in my opinion, that the latter wholly failed to show his freedom from contributory negligence. The evidence does not show, nor allow an inference, that he exercised due care, or any care whatever, and section 202 of the Labor Law, relating to the employer's liability, has not relieved the employé of the burden of establishing that as an essential element of his case. (*Wilson* v. *New York Mills*, 107 App. Div. 99; 113 App. Div. 889; affd., 190 N. Y. 550.) The plaintiff was perfectly familiar with the existing conditions; for his employment in the engine room had continued for over three months. While, with other ways to reach the engine room, the right to make use of this particular way to it had been tacitly assented to by the defendant, the plaintiff was, nevertheless, bound to go through it

with that care, which an imperfect perception of things would suggest to one in the possession of his senses. From his knowledge of the position of the shaft, he was aware that he was unable to walk through the passage in a natural, or an upright, position, without striking his head. He says the way was "kind of dim;" which was equivalent to the statement that the imperfect light disabled him from seeing clearly ahead of him. If that was so, and we must accept his statement as to the fact, it was incumbent upon him, in taking that way, to proceed with great care, and as slowly, as would enable him to distinguish objects in the dim light. But there is not a word from him as to how he went, or how he conducted himself, other than in his language: "I started in there and when I got about fifteen feet, I struck my head against the shaft and it knocked me against the revolving pulley." He had no right to presume that the passageway was free from obstruction and nothing in his evidence permits of an inference that his mind was upon what he was doing, or that he was exercising any of that care which the conditions required, and if not, then the accident was a natural misadventure, which he could not charge to his employer. Had familiarity with danger caused him to contemn risks; or was his mind engrossed with other thoughts that morning? The evidence is silent, in its facts, upon the subject and admits of nothing but speculation. Having failed to furnish the evidence that he was free from fault, either in his own testimony, or in the facts, the trial court should not have submitted the case to the jury. The complaint should have been dismissed and, for the error in refusing to do so, the judgment should be reversed, and a new trial had; the costs to abide the event.

CULLEN, Ch. J., HAIGHT, VANN, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.