(152 App. Div. 697.)

SANTIAGO v. JOHN E. WALSH STEVEDORE CO.

(Supreme Court, Appellate Division, Second Department.    October 4, 1912.)

1. MASTER AND SERVANT (§§ 101, 102*)—DUTY OF MASTER—APPLIANCES.

A master need not provide other instrumentalities than he has furnished merely because of request of a servant; and it is immaterial that there are better appliances, so long as those provided are reasonably safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178, 179, 180–184, 192; Dec. Dig. §§ 101, 102.*]

2. TRIAL (§ 268*)—INSTRUCTIONS—REFUSAL OF REQUEST.

A requested charge being proper, and the point not having been theretofore referred to in the charge, refusal to give it, "except as already charged on that point," is error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 662, 673; Dec. Dig. § 268.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK.

A stevedore of eight years' experience, acting as gangwayman in the loading of a vessel, must have known of any danger from the absence of lights, the fact that there was only one skid on which to rest the freight, after it was raised to the deck, before being lowered into the hold, and the fact that the foreman and winchman were drunk, all of which was known to him, and so assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

4. TRIAL (§ 211*)—INSTRUCTIONS—PRESUMPTION—FAILURE TO PRODUCE WITNESS.

Instructing, relative to a person who was in defendant's employ at the time and place of the accident to plaintiff, but not shown to have been in defendant's employ, or under its control, at the time of the trial, that, if it had failed to produce any material witness, the jury might assume his testimony would not be favorable to the party failing to call him, is error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 505; Dec. Dig. § 211.*]

5. MASTER AND SERVANT (§ 129*)—INJURY TO SERVANT—PROXIMATE CAUSE.

Any absence of lights was not the proximate cause of the injury of a stevedore, acting as gangwayman in the loading of a ship; he being able to see, the accident occurring from the winchman starting up the engine too quick, and he not depending on sight for his actions, but they being controlled by signals given by a whistle.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

6. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK.

An employé, appreciating any danger from the absence of an appliance, and going on with his work when his demand for the supplying of the appliance was refused, assumes the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

7. MASTER AND SERVANT (§ 176*)—INJURY TO SERVANT—PROXIMATE CAUSE.

Any incompetency of a fellow servant of the injured employé is not ground for recovery; he having nothing to do with the management of the appliances in connection with which the accident arose.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307, 351; Dec. Dig. § 176.*]

8. MASTER AND SERVANT (§ 173*)—INJURY TO SERVANT—INCOMPETENCY OF FELLOW SERVANT.

The master, not knowing or being advised of the habit, is not liable to an injured servant because of the incompetency of a fellow servant on account of his habit of drinking.

[Ed. Note.—For other cases, see Master and Servant, Cent Dig. §§ 343–346; Dec. Dig. § 173.*]

9. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK—INCOMPETENCY OF FELLOW SERVANT.

A servant, knowing of a fellow servant's habit of drinking, and that he was drunk at the time of the accident, assumed the risk of his incompetency on that account.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

Appeal from Trial Term, Richmond County.

Action by Rafele Santiago against the John E. Walsh Stevedore Company. From a judgment for plaintiff, and from an order denying

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and RICH, JJ.

James J. Mahoney, of New York City (M. J. Wright and Edward I. Taylor, both of New York City, on the brief), for appellant.

James Burke, Jr., of New Brighton, for respondent.

BURR, J. [1-4] This is a common-law action of servant against master. The judgment must be reversed for errors in connection with the charge. One of the alleged grounds of defendant's negligence was failing to provide adequate appliances, to wit, skids, which were employed in the prosecution of the work. The evidence on this point was conflicting. The court was asked to charge:

"That the defendant is not bound to provide other instrumentalities than he has furnished merely at the request of a servant; that it is immaterial that there are better or different appliances, so long as those which he provides are reasonably safe."

The court said:

"I decline to charge, except as already charged upon that point."

And defendant excepted. The request was a proper one. Fahey v. New Amsterdam Gas Co., 134 App. Div. 611, 119 N. Y. Supp. 437; Smith v. Long·Island Railroad Co., 129 App. Div. 427, 114 N. Y. Supp. 228; Maue v. Erie Railroad Co., 198 N. Y. 221, 91 N. E. 629; Harley v. B. C. M. Co., 142 N. Y. 31, 36 N. E. 813. The point had not been theretofore referred to in the charge. Further allegations of negligence were an insufficiency of lights and the intoxication on this occasion of two of plaintiff's coemployés; one being the foreman and the other the winchman. The court was asked to charge:

"That if the plaintiff knew of the insufficiency of lights, of the number of skids that were there, and of the alleged intoxication of O'Hara and Chrystie, that he cannot recover; that he assumed the risk."

The court declined, except as already charged. For the reason above stated, the exception did not qualify the declination. Plaintiff was an experienced stevedore, having been engaged as such for eight years in this country. He testified to the absence of lights, to the fact that there was only one skid, and that he knew that the foreman and winchman were drunk on this occasion. With his experience, he must have known the resulting damages, if any. The request, under the circumstances, should have been complied with. Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56; Marsen v. Nichols Copper Co., 134 App. Div. 294, 118 N. Y. Supp. 867; White v. Lewiston & Youngstown F. R. Co., 94 App. Div. 4, 87 N. Y. Supp. 901; Bria v. Westinghouse, Church, Kerr & Co., 133 App. Div. 346, 117 N. Y. Supp. 195; Skapura v. National Sugar Refining Co., 83 App. Div. 21, 81 N. Y. Supp. 1085; Fitzgerald v. Newton Falls Paper Co., 204 N. Y. 184, 97 N. E. 457; Rooney v. Brogan Construction Co., 194 N. Y. 32, 86 N. E. 814.

The foreman, O'Hara, was not called as a witness on the trial. Plaintiff's counsel asked the court to charge:

"That if the defendant has failed to produce any material witness, the jury may assume that the testimony of such witness will not be favorable to the party who fails to call him."

The court so charged, and defendant excepted. There was no evidence in the case that at the time of the trial O'Hara was in defendant's employ or under its control. Defendant, calling the court's attention to that fact, asked it to charge:

"That there is, therefore, no presumption that his testimony would be unfavorable to the defendant, if produced."

The court declined, adding:

"There is no proof of any attempt on the part of the defendant in this case to produce that witness, nor any excuse offered why he is not produced."

Defendant excepted. These exceptions present fatal error.

[5, 6] But, as a new trial must be had, it may not be amiss for us to say that upon the evidence presented by this record defendant's motion for a nonsuit should have been granted. There is a sharp conflict of evidence upon every material point in the case, and there were many discrepancies, contradictions, and improbabilities in the testimony of plaintiff and his witnesses. But, accepting it for the time being as true, the accident resulting in plaintiff's injury occurred in this wise:

Defendant was engaged on November 4, 1908, about 7:30 o'clock in the evening, in loading a vessel lying at a pier in the East river. A lighter lay alongside, from which cotton was being raised by a block and fall, and lowered into the ship's hold. The hoisting appliances were operated by a steam winch. Upon the deck of the vessel was a plank or skid, one end of which rested upon the coaming of the hatch and the other on the side of the vessel. Plaintiff was the gangwayman, Chrystie was the winchman, and O'Hara was the foreman on the deck of the vessel. Three bales of cotton were placed in a sling, the gangwayman gave to the winchman a signal to raise the load, and as it swung over the deck of the vessel a further signal to lower, so that the load rested on the skid. This was to enable the gangwayman to see that it was clear in the hold, and that the workmen there employed were out of the way of the descending draft. Upon a further signal they were lowered into the hold. The bales of cotton had been raised from the lighter and rested on the skid.

As plaintiff contends, before he had an opportunity to see if the hold was clear, and before he had given any signal, the winchman started up the engine and the bales of cotton toppled over from the skid and fell upon his leg, breaking it between the knee and the ankle. Plaintiff contends that defendant's negligence may be found (a) in an absence of lights; (b) in an insufficient number of skids (there was only one when there should have been two); (c) in retaining in its employ incompetent employés with knowledge of their incompetency, which incompetency was the cause of the improper management of

the winch.  So far as the absence of lights is concerned, if it existed, it was not the proximate cause of the injury.  Plaintiff testifies that there was *no* light on the deck.  The testimony somewhat taxes credulity, for at half past 7 on the evening of November 4th it appears that he could see perfectly to do his work.  He could not only see the bales of cotton on the lighter, see them as they came over the ship's side, see them as they rested on the skid, but also apparently see down in the hold sufficiently well to ascertain if it was safe to lower.  Two of his witnesses, and the only eyewitnesses of the accident which he called, were engaged on the deck of the lighter, and they claim to have seen exactly how the accident occurred.  One of them testified that he could see—

"the bales go from the edge of the deck to the hatchway.  We could see it; could see it plainly.  We could see the skid from where I stood."

According to plaintiff's testimony, the winchman did not depend upon sight.  His actions were controlled by signals given by a whistle. As to the skids, plaintiff and his witnesses testified that there was but one, about 2½ or 3 feet wide; whereas, as plaintiff testified, it was customary to have two wide skids.  But if the accident can be attributed to the fact that there was but one, plaintiff knew that there was but one, knew that it was customary to have two, and appreciated the danger, if any, arising from the use of one; for he testified that he complained to O'Hara about it 14 or 15 minutes before the accident, and he replied:

"I will not put any other skids; go on and work with what you have."

Under the authorities above cited, the risk from that time on became his.

[7-9] As to the incompetent fellow servants, the alleged incompetency of O'Hara may be dismissed from consideration.  He had nothing to do with the management of the appliances in connection with which the accident arose.  Plaintiff testifies that he did nothing but walk up and down the deck and the hold.  There is no suggestion that on this occasion he gave any directions to the winchman, nor is there evidence that he had authority to employ and discharge the workmen. So far as Chrystie, the winchman, is concerned, plaintiff testified that on the night in question he was "dizzy," two of his witnesses said he was "drunk," a third that at 11 o'clock he could hardly walk, and that he was put off the job.  As to this he is contradicted, not only by all of defendant's witnesses, including Chrystie himself, but by one of the witnesses called for plaintiff, who, after saying that he was drunk, admitted that he continued to work the winch until 2 o'clock in the morning after the accident, when the unloading of the lighter was completed, and that O'Hara, who, as plaintiff testified, was so drunk that "he could not go down the stairs," took plaintiff's place after he was injured, and also worked until 2 the next morning, performing the duties of gangwayman.

But there was no evidence that Chrystie was in the habit of drinking to excess.  One witness said he had seen him drunk twice before; but it did not appear that he was then on duty.  Another said, "I see

him sometimes have a little in." It does not appear that defendant knew or was advised of these lapses. But plaintiff knew him, and had worked with him for years. If his habits made him incompetent, he was at least as well informed of the fact as defendant, and, if on this occasion he was so drunk that it was unsafe to work with him, plaintiff knew even better than defendant what his condition was.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.