(155 App. Div. 278.)

ROSENSTEIN v. McCUTCHEON.

(Supreme Court, Appellate Division, Second Department. February 21, 1913.)

1. MASTER AND SERVANT (§ 265*)—INJURIES—BURDEN OF PROOF—PROXIMATE CAUSE.

A servant suing for personal injuries must prove that the employer's negligence proximately caused his injuries.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. NEGLIGENCE (§ 136*)—PRESUMPTION.**

Negligence is not presumed, and to authorize a submission of the question to a jury the evidence must reasonably authorize the conclusion of its existence; a mere surmise being insufficient.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

**3. CUSTOMS AND USAGES (§ 19*)—"USAGE"—EVIDENCE.**

"Usage" is a matter of fact and not of opinion, and must be shown by witnesses who have observed the method of transacting the particular kind of business as conducted by themselves or others.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 41–43, 45, 46; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, vol. 8, pp. 7223–7226.]

**4. APPEAL AND ERROR (§ 263*)—PRESENTATION BELOW—LAW OF CASE.**

An instruction which was not excepted to or attempted to be modified at trial, becomes the law of the case on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1532; Dec. Dig. § 263.*]

**5. MASTER AND SERVANT (§ 276*)—EVIDENCE—PROXIMATE CAUSE.**

Evidence, in an action for injuries to a servant while cleaning machinery, held not to show that the accident was proximately caused by any negligence in having defective cables, or other negligent act of the employer; not showing the cause of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

Hirschberg, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Meyer Rosenstein against James McCutcheon. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

E. Clyde Sherwood, of New York City (William B. Davis, on the brief), for appellant.

Thomas J. O'Neill, of New York City (L. F. Fish, of New York City, on the brief), for respondent.

JENKS, P. J. This action is brought under the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204). The servant, an adult who had been in employ for five months as a liftman, was required to clean the machinery of the lift on every Saturday. When cleaning the governor of the machinery above the shaft of the lift, he stood upon a girder that was below the governor, and kept his foothold by clinging with his left arm to an angle iron that was level with his chest. The cables of the lift ran semihorizontally four or five inches above his shoulder. While thus engaged, and the cables were moving, his left arm was torn from his body.

There were no witnesses of the casualty, and the version of the plaintiff is vague. He says, "All of a sudden I felt a tug on the shoulder and my arm was off." There is nothing more definite save, in repeating his story, he adds that after the tug he found the cable

off the wheel, that he felt that (i. e., referring to the foreign force) must be the cable, that he "did not see where it (his arm) was being pulled or what was pulling it." Again: "I did not see anything. I know the cable was on my arm and the arm was off." And once again: "At the time that the cable was on my arm I don't remember whether the cable was still on the sheave. I was unconscious after I felt the tug." Thus while we may conclude that, if the cables had not been working this casualty would not have happened, the manner of contact between the plaintiff and the cables or the immediate machinery that moved responsive to the cables does not appear.

[1, 2] The plaintiff was bound to prove causal negligence. He was not confined to one specific act of negligence, but he was compelled to offer evidence that permitted the logical conclusion that some negligent act was the cause of his injury. As is said by the court in Morris v. Railway Co., 148 N. Y. at pages 185 and 186, 42 N. E. at page 580:

"Negligence is not to be presumed; but, to justify the submission of that question to a jury, there must be more than a mere surmise that there may have been negligence on the part of the defendant. There must be evidence upon which the jury might reasonably and properly conclude that there was negligence."

In Dobbins v. Brown, 119 N. Y. at page 193, 23 N. E. at page 537, the court say:

"The omission to use such care has been held to be negligence, rendering the employer liable for damages occasioned by it; but such neglect must be proved, either by direct evidence or the proof of facts from which the inference of negligence can be legitimately drawn by the jury. It cannot be supported by mere conjecture or surmise, but must be made referable by the proof to some specific cause or defect. It has been held that the mere fact that an accident occurred which caused an injury is not generally, of itself, sufficient to authorize an inference of negligence against a defendant. Curtis v. R. & S. R. R. Co., 18 N. Y. 534 [75 Am. Dec. 258]."

See, too, Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.

The contention of the respondent is that the defendant was negligent in ordering or permitting a cleaning of this machinery when the lift was in use, so that the cables must move, and in working the lift with defective, old, worn, and loose cables. The proposition naturally divides itself into two parts—the mere working of the·lift at the time of the cleaning, and the working of the lift in its condition of equipment.

First as to the contention that the master was negligent in ordering or permitting the cleaning of such machinery while the lift was working: I am not satisfied that the plaintiff established general custom. He called but a single witness, who specified 5 buildings, and who said that he knew of "possibly 50" others, and knew "generally around the city of New York," where the machinery was shut down when such cleaning was done; but upon cross-examination he but specified 2 buildings, adding, however, there were several others which he could not specify. He admitted that he was not in the habit of going about "to see how they clean elevators," that he personally had rarely seen

any cleaning, that he had seen cleaning 3 times in the last two years, and possibly 27 times in the last 18 years, and finally:

"To a certain extent my familiarity with the manner in which the overhead machinery was cleaned in the various buildings in and about New York City was obtained from my exchange of views with men who were superintendents in those buildings. Possibly the greater part of my familiarity was obtained in that way."

[3] "Usage is a matter of fact, not of opinion, and must be shown by those who have observed the method of transacting the particular kind of business as conducted by themselves and others." Rickerson v. Hartford Fire Ins. Co., 149 N. Y. 316, 43 N. E. 859, citing authorities.

Among those authorities is Mills v. Hallock, 2 Edw. Ch. 652, in which case it was said:

"A custom must be proved by evidence of facts (and not by mere speculative opinions), by means of witnesses who have had frequent and actual experience of the custom. The testimony of those who speak from report only, and not from particular instances within their own knowledge, if receivable at all, is of no weight. 4 Starkie, 452."

[4] While there may be no hard and fast rule as to the number of instances, Labatt on Master & Servant, § 53, suggests that such number should be relatively large when compared with the whole. But conceding for the argument that the plaintiff gave sufficient evidence to justify a conclusion that the defendant violated the general custom, the question remains as to the conduct of the plaintiff. And the *law of this case* for that trial was established by the instruction of the learned court without objection, exception, or requested modification:

"If the plaintiff during a period of five months had weekly cleaned the elevator machinery above the shaft, and that one of the elevators was in motion during the time, and he had made no objection to that method of cleaning, that he assumed the necessary and obvious risks of that situation."

For the undisputed proof brings the plaintiff within the purview of the instruction.

[5] Second, as to the contention that the master was negligent in working the lift "with defective, old, worn, and loose cables": As I have said, the precise cause of the accident was not shown. Indeed, the learned counsel for the respondent says in his points:

"The only proof on the subject is given by the plaintiff wherein he says that while he was cleaning the governor, with his hand on the angle iron under the cable; the cables moved, his arm was caught, and the cable was off the wheel."

But he contends that the proof shows that the cables were old and worn, that broken strands were sticking like pins out from the cables and the cables rattled, "from which," he says, "the inference follows that they were loose." And it is further called to our attention that there was proof "that this elevator started with a jerk."

I do not think that there was any evidence, or at least sufficient evidence, to show that the mere fact that the cables had become old and worn indicated that such condition had any causal relation to the casualty. And there is no evidence that establishes, or tends to establish, the fact that, even if the cables were loose, or even if the eleva-

tor started with a jerk, these defects caused the accident. The learned counsel writes in his brief, however:

"These cables were proven to be old and loose, and that this particular elevator admittedly started with a jerk and a jar, and the other elevator did not; and these facts, together with the plaintiff's story, create the inference that the cable was jarred off of the wheels, and caught the plaintiff's arm on the angle."

And again:

"What probably happened was that this admittedly old and loose cable on this elevator, that started with a jerk, and of which the plaintiff had complained, flopped off the wheel on plaintiff's arm, and the jury were authorized in so finding; and it is the province of the jury to draw the inference which can be fairly drawn from the facts."

This theory of accident is in accord with the bill of particulars. But there is no proof that the cable "flopped" off the wheel *before* the casualty, and no proof that justifies the inference thereof. That there was contact between the body of the plaintiff and the moving cables or the moving machinery does not justify such an inference, for a very slight motion of the plaintiff's body would have brought him into contact with the cables while in normal position. And such inference is counter to the testimony of the defendant's witness Mr. Coffin, a practical expert of great experience. The cables were of steel, five-eighths of an inch in diameter, and ran in grooves on the wheel nearest the point of the casualty, which were three-quarters or seven-eighths of an inch deep. The rims came above the edge of the cable for a quarter of an inch. The building was 12 stories high, and the car then being lifted was ascending and at the second story. Mr. Coffin estimated that each car weighed 2,500 pounds, and that the cables then supported a weight of about 5,000 pounds. He testifies that, even if the lifting cable were loose, in his opinion the cable could not jump out of the sheave or wheel without some intervening cause, for the cables weighed 200 or 300 pounds, and that the gravity and the weight thereof would hold them in the grooves, and with the weight thereupon they could not come out of the grooves without an intervening cause. In his own words, these cables "do not jump up in the air unless there is something to make them jump up." He also testifies that a stick of wood or man's arm, or waste, might throw them out; but to bring about that result it would be necessary for that contact to take place at the point where the cable takes a semihorizontal position and leads onto the sheave (wheel). None of the other alleged defects is shown by evidence, direct or inferential, as a cause of the casualty, and this witness negatives any such possibility.

For aught that appears in this case, the plaintiff, with his arm resting within a few inches of the moving cables and the sheave, may have come in contact by the moving of his own body towards it, rather than any aberration of the cables moving towards him. He stood upon this narrow iron girder and on the edge thereof, and he testified that upon that girder was a "lot of grease"; he was moving his body necessarily in the act of cleaning the governor, and the slightest slip on his part might well have brought his shoulder or arm into this contact.

Moreover, I have grave doubts whether the proof of the plaintiff's own conduct was sufficient to absolve him. In Fitzgerald v. Newton Falls Paper Co., 204 N. Y. 184, 188, 97 N. E. 457, 458, the court, per Gray, J., say:

"But if the evidence might be deemed to admit of a doubt, and to raise a question of fact as to defendant's having performed its whole duty towards the plaintiff, in the respects discussed, there can be no reasonable doubt, in my opinion, that the latter wholly failed to show his freedom from contributory negligence. The evidence does not show, nor allow an inference, that he exercised due care, or any care whatever, and section 202 of the Labor Law, relating to the employer's liability, has not relieved the employé of the burden of establishing that as an essential element of his case. Wilson v. New York Mills, 107 App. Div. 99 [94 N. Y. Supp. 1090]; Id., 113 App. Div. 889 [99 N. Y. Supp. 1151], affirmed, 190 N. Y. 550 [83 N. E. 1134]."

The evidence may have established that it was not negligence for him to take his stand upon the girder and to support himself by grasping the angle iron, but it does not follow that he must needs bring his arm or shoulder in such close proximity to the cables which the plaintiff must have known were in motion. And in the absence of any proof of such necessity the physical situation does not point to it, but would seem to indicate that he could have grasped the iron at a distance that was safe even from the cables if they "jumped" from their normal place. Moreover, it appears that the cables were in motion because they were required to move the lift. The plaintiff's witness Troost, who at the time represented the defendant's superintendent, testifies that on this day the plaintiff came to him, asked for waste and oil, and "wanted to clean the elevator. 'How about the tenants?' 'The freight is all right,' he said, 'and there is nothing much to do.' I said, 'All right, go ahead.' * * * I did not give him any orders." And this testimony is in effect corroborated by the plaintiff. Now, the evidence is that he who cleaned controlled the actions of his fellow in management of the car; that is, that if the cleaner wished the car stopped he would notify the liftman. Stone, the man in charge of the lift on that day, testifies:

"When Mr. Rosenstein went to the upper part of the shaft to clean the machinery, it was he who gave me the directions as to when to move the car and to make the changes. I was under his guidance during that time. Whenever the car was moved by me, it was by the direction of Mr. Rosenstein, in a way. I mean that if he wanted me to stop the car for any length of time he would let me know about it; otherwise I would run the car as usual and answer my calls. Whenever he gave me some direction I followed that."

This testimony is not contradicted. And yet the plaintiff testifies that, after he had taken his position in order to clean the governor, the operator of the lift called to him, "All right, Rosenstein," and that he said, "All right, Fred." Did he not, then, authorize Stone to start up the machinery?

The judgment and order must be reversed, and a new trial be granted; costs to abide the event. All concur, except HIRSCHBERG, J., dissenting.