**CAPITOL INTERNATIONAL AIRWAYS, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,
Respondent.**

**No. 21062.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 23, 1968.

Decided March 8, 1968.

**28.**  107 U.S.App.D.C. at 183, 275 F.2d at 641.

Mr. Theodore I. Seamon, Washington, D. C., with whom Messrs. Joseph D. Sullivan and Philip A. Ryan, Washington, D. C., were on the brief, for petitioner.

Mr. Robert L. Toomey, Washington, D. C., Attorney, Civil Aeronautics Board, for respondent. Asst. Atty. Gen. Donald F. Turner, Messrs. Joseph B. Goldman, General Counsel, Civil Aeronautics. Board, O. D. Ozment, Deputy General Counsel, Warren L. Sharfman, Associate General Counsel, Litigation and Legislation, Burton S. Kolko and J. Michael Roach, Attorneys, Civil Aeronautics Board, and Howard E. Shapiro, Attorney, Department of Justice, were on the brief, for respondent.

Before EDGERTON, Senior Circuit Judge, and BURGER and TAMM, Circuit Judges.

TAMM, Circuit Judge:

I

Petitioner, an air carrier holding certificates authorizing it to engage in supplemental (charter) air transportation, seeks review of two Civil Aeronautics Board orders, both of which were effec-

tive April 18, 1967. Order E–24998 found that petitioner, in operating a charter flight: (a) collected greater compensation than provided in its tariffs; (b) failed to obtain parts of the Statement of Supporting Information required by Board regulations; and (c) failed to obtain a regulation-required Certified Passenger Manifest. This order also directed petitioner to cease and desist from: (a) charging transportation at rates different from its effective tariffs and (b) operating pro rata charter flights without obtaining information and manifests required by Board regulations. The second Board order here involved, E–24999, denied petitioner's application for discretionary review by the Board of the initial decision of the hearing examiner and made effective the initial decision of the hearing examiner as the decision of the Board.

Action before the Board was initiated by its Bureau of Enforcement with the filing of a complaint charging petitioner specifically with violations arising from petitioner's conduct and action in the handling of a charter European flight contracted for by the New York State Teachers Study Group. After petitioner had filed its answer to the complaint, and in due course, hearings were held before an examiner, at which hearings testimony was taken from various witnesses; exhibits were filed, and briefs submitted at the close of the testimony. The examiner issued his decision, ruling that petitioner had, in fact, received payment of the full charter price prior to its assessment and collection of an additional $92.50 from each passenger and had, in fact, failed to obtain parts of the Statement of Supporting Information and the Certified Passenger Manifest as charged in the Bureau of Enforcement's complaint. The examiner entered an order directing petitioner to cease and desist from these violations. Thereafter, Capitol International Airways filed a timely petition for discretionary review of the examiner's decision with the Board. The

Board declined to review, thereby effectuating the examiner's decision as the final order of the Board.

## II

Petitioner's challenge to the Board action is based upon the role of one Friedman and the question of whether the testimony and exhibits establish him as the agent of the carrier. The Board, by sustaining the examiner's ruling, held that Friedman was the agent of petitioner and consequently that funds paid to him by the chartering group were in fact paid to petitioner, even though the record established that Friedman's wife, as president of the New York State Teachers Study Group, turned the funds collected for several group trips over to her husband as the owner of the travel agency which handled the details of the several tours. The problem crystallized when Friedman was indicted by the grand jury of Bronx County, New York, for grand larceny of some $165,000 in money belonging to the Study Group and was ultimately convicted of this violation.

Our review of the record discloses detailed testimony of the relationship and the dealings between Friedman and his wife, and between Friedman and petitioner. The record is replete with evidence which supports the examiner's conclusion that Friedman was petitioner's agent in collecting the funds. There existed a written contract between petitioner and Friedman entitled "Charter Agency Agreement,"[1] wherein petitioner appointed Friedman as "agent to solicit and develop aircraft charter traffic *on its behalf * * *"* (emphasis supplied) with reference to the charter flight herein involved. This contract appointed Friedman, who "accepts appointment," and provided for a commission compensation to him "for all services rendered by [a]gent to carrier. * * *" The contract provided that it "constitutes a personal contract * * *" which could not be transferred without petitioner's written consent and that "[a]gent agrees to represent the carrier with the charter-

1. Exhibit BOE2, Joint Appendix at 415.

er as directed by the carrier * * * " in the completion and transmission of all documents required for the charter service. The contract contained provision for the means and payment of funds through Friedman to the carrier and required that Friedman not accept funds in his own name. This last provision was overtly violated by Friedman, but the record is strong and convincing that petitioner knowingly acquiesced in his conduct, and by its conduct so effectively modified the terms of its agreement with him as to permit him to receive payments from the Study Group and intermingle them with his own funds. In the correspondence and enumerated check transactions, petitioner constructively approved Friedman's deviations from the payment terms of the agency contract. "Although an agent is not authorized to act as he does, if the principal, with knowledge of the facts acquiesces in it, *permitting the agent to do similar acts*, there is normally ratification as to past acts * * and authority to do similar acts in the future. * * * " (Emphasis supplied.) SEAVEY, AGENCY, § 21H at 39 (1964). *See also:* RESTATEMENT (SECOND) OF AGENCY §§ 43(1), 94 (1957). The evidence relating to petitioner's receipt of partial payments of the charter flight price drawn upon Friedman's travel agency checking account is adequate to establish notice and knowledge on petitioner's part that Friedman was receiving funds from the Study Group, commingling them with his own funds, and ignoring the agency contract provision prohibiting his acceptance of charter funds in his own name. "[T]he law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it." Ives v. Sargent, 119 U.S. 652, 661, 7 S.Ct. 436, 441, 30 L.Ed. 544 (1887), quoting with approval Wollensak v. Reiher, 115 U.S. 96, 99, 5 S.Ct. 1137, 1139, 29 L.Ed. 350 (1885). "[A] party to a transaction, where his rights are liable to be injuriously affected by notice, cannot wilfully shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received. * * * " The Lulu, 77 U. S. (10 Wall.) 192, 201, 19 L.Ed. 906 (1869). "[W]here there is enough to put those concerned upon inquiry, the means of knowledge and knowledge itself are, in legal effect, the same thing." Jones v. Guaranty and Indemnity Co., 101 U.S. 622, 633, 25 L.Ed. 1030 (1879). Thus, with knowledge of this conduct, petitioner, by continuing to deal with Friedman, not only failed to repudiate his original proscribed conduct and revoke his agency contract, but instead, by a continuing course of tolerance (and consequently acceptance) acquiesced in his deviation from the terms of the contract and legally authorized him to continue these practices. The fact that Friedman may have been the Study Group's general agent does not require a contrary conclusion. We find in the factual picture presented by the record sufficient evidence to support the Board's conclusion that Friedman's relationship with petitioner was legally that of collecting agent, whether or not he was simultaneously the general agent of the Study Group.

### III

The Board's Order E–24998, as heretofore noted, also found that petitioner failed both to obtain parts of the Statement of Supporting Information and the Certified Passenger Manifest required by Board regulations.[2] The examiner determined that these regulations, requiring certain specified documentation for each transatlantic charter operation, had been violated by failure on the part of petitioner to obtain these documents. The examiner's findings with reference to these two items are supported by the evidence of record. In fact, petitioner does not seriously deny that it failed to comply with the regulations but seeks to negate the seriousness of its conduct on the ground that the violations were of a technical nature, were

2. 14 C.F.R. §§ 295.12, 295.35 (1967).

not wilful, and did not justify the issuance of a cease and desist order. We conclude that these contentions are without merit. The legality of the challenged regulations is not questioned, nor does petitioner deny that it knew it was violating the regulations.

The legal authority for the Board's action is found in 49 U.S.C. § 1482(c) (1964), which provides:

> If the Administrator or the Board finds, after notice and hearing, in any investigation instituted upon complaint or upon their own initiative, with respect to matters within their jurisdiction, that any person has failed to comply with any provision of this chapter or any requirement established pursuant thereto, the Administrator or the Board shall issue an *appropriate* order to compel such person to comply therewith. (Emphasis supplied.)

■■ As petitioner points out, "the issuance of a cease and desist order rests squarely within the discretion and judgment of the Board and depends upon public interest considerations in the light of the facts and circumstances of the individual case." (Brief for Petitioner at 36, citing *Shulman, Inc., Enforcement Proceding*, 30 C.A.B. 216, 220 (1959)). Almost daily, this court is called upon to substitute its judgment for the findings of an administrative agency, despite the ever-growing number of Supreme Court and circuit court opinions emphasizing and re-emphasizing the wide latitude for judgment provided by the acts of Congress creating the several administrative agencies. Speaking for the Court in 1943, Mr. Chief Justice Stone, in discussing the review provisions of "quasi judicial" agencies stated:

> [W]e have repeatedly emphasized the scope that must be allowed to the discretion and informed judgment of an expert administrative body. Federal Trade Comm'n v. [Standard] Education Society, 302 U.S. 112, 117 [58 S.Ct. 113, 115, 82 L.Ed 141]; Gray v. Powell, 314 U.S. 402. 412 [62 S.Ct. 326, 332, 86 L.Ed. 301]; Labor Board v. Link Belt Co., 311 U.S. 584, 597

[61 S.Ct. 358, 365, 85 L.Ed. 368]; see Federal Communications Comm'n v. Pottsville Broadcasting Co., 309 U.S. 134, 141, 144 [60 S.Ct. 437, 440, 442, 84 L.Ed. 656]. * * * *Compare* Houston v. St. Louis Independent Packing Co., 249 U.S. 479, 487 [39 S.Ct. 332, 335, 63 L.Ed. 717]; Opp Cotton Mills v. Administrator, 312 U.S. 126, 156 [657, 61 S.Ct. 524, 537, 85 L.Ed. 624]. Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 227–228, 63 S.Ct. 589, 595, 87 L.Ed. 724 (1943).

As in the *Quaker Oats* case, we have herein, as pointed out earlier, a statutory provision calling upon the Administrator or the Board to make a finding which, of course, necessitates the exercise of expert judgment. "That judgment, if based on substantial evidence of record, and if within statutory and constitutional limitations, is controlling even though the reviewing court might on the same record have arrived at a different conclusion." *Quaker Oats, supra,* 318 U.S. at 228, 63 S.Ct. at 595. The hearing examiner found violations of both the Act and the regulations. The evidence of record overwhelmingly supports those findings. The order relates to those violations and is addressed only to precluding repetition of the violations. We conclude that the challenged order is a valid, legal, and proper one.

■ Petitioner seeks solace by enumerating cases in which the Board declined to take enforcement action for varying reasons, including lack of a continuing course of misconduct and a good faith action on advice of counsel. The short answer to this argument is, of course, that absent a showing of abuse of discretion, it is the Board's sole responsibility to decide upon the appropriate action and remedy in individual cases. Outagamie County, Wisconsin v. C.A.B., 355 F.2d 900 (7th Cir. 1966).

### IV

Petitioner's final argument challenges Board action in Order E–24999 in denying its petition for discretionary review

of the decision of the hearing examiner. The petition for discretionary review of the initial decision was timely filed and alleged that the decision was based upon erroneous findings of fact, legal conclusions clearly contrary to law, and involved substantial questions of law, policy, and discretion which required Board review. The petition, accordingly, embraced the standards set forth under the Board's "Rules of Practice in Economic Proceedings," as set forth in 14 C.F.R. § 302.28(a) (1 & 2) (1967).[3] The discretionary review under this Rule is also shaped in its application by relevant provisions of Reorganization Plan Number 3 of 1961, 75 Stat. 837, 49 U.S.C. § 1324 (1964).[4]

At the threshold of this point, we are confronted with a semantic problem occurring frequently in administrative agencies as to the action described by the denial of a motion to review. In most instances of this kind, the challenged action is, in fact, reviewed by the concerned agency or court, but the formal denial of the motion to review is an unfortunate format for affirming the earlier action. The basic difference in most cases is that if the motion to review is granted, the reviewing agency hears argument addressed to the challenged action by all concerned parties, while denial of the motion indicates that after review of the initial action, with specific consideration of the grounds set forth in the petition to review, the reviewing authority, without further hearing or argument, is satisfied in law and fact to allow that action

3. Sec. 302.28 Petitions for discretionary review of initial decisions; review proceedings.

(a) *Petitions for discretionary review.* (1) Review by the Board pursuant to this section is not a matter of right but of the sound discretion of the Board. Any party may file and serve a petition for discretionary review by the Board of an initial decision within 25 days after service thereof. Such petitions shall be accompanied by proof of service on all parties.

(2) Petitions for discretionary review shall be filed only upon one or more of the following grounds:

(i) A finding of a material fact is erroneous;

(ii) A necessary legal conclusion is without governing precedent or is a departure from or contrary to law, Board rules, or precedent;

(iii) A substantial and important question of law, policy or discretion is involved; or

(iv) A prejudicial procedural error has occurred.

4. Relevant provisions of Reorganization Plan No. 3 of 1961, 75 Stat. 837, 49 U.S.C. § 1324 (1964):

CIVIL AERONAUTICS BOARD

**SECTION 1.** *Authority to delegate* —(a) In addition to its existing authority, the Civil Aeronautics Board, hereinafter referred to as the "Board", shall have the authority to delegate, by published order or rule, any of its functions to a division of the Board, an individual Board member, a hearing examiner, or an employee or employee board, including functions with respect to hearing, determining, ordering, certifying, reporting or otherwise acting as to any work, business, or matter; *provided, however,* that nothing herein contained shall be deemed to supersede the provisions of section 7(a) of the Administrative Procedure Act (60 Stat. 241), as amended.

(b) With respect to the delegation of any of its functions, as provided in subsection (a) of this section, the Board shall retain a discretionary right to review the action of any such division of the Board, individual Board member, hearing examiner, employee or employee board, upon its own initiative or upon petition of a party to or an intervenor in such action, within such time and in such manner as the Board shall by rule prescribe, *provided, however,* that the vote of a majority of the Board less one member thereof shall be sufficient to bring any such action before the Board for review.

(c) Should the right to exercise such discretionary review be declined, or should no such review be sought within the time stated in the rules promulgated by the Board, then the action of any such division of the Board, individual Board member, hearing examiner, employee or employee board, shall, for all purposes, including appeal or review thereof, be deemed to be the action of the Board.

to prevail. We are told by the Board that this is, in fact, what happened in the present case. "[I]t is inaccurate to characterize the Board's action in the present case as 'declining review.' Rather, the Board considered the substance of the case together with petitioner's allegations of error and then determined that further argument was unnecessary because it agreed with the initial decision." Brief for Respondent at 46, n. 39.

▮ It seems clear to us that the power to grant or deny review of the initial decision is entrusted by law and regulation to the Board. The late President Kennedy emphasized this in submitting the Reorganization Plan, *supra*, to the Congress: "There is however reserved to the Board as a whole the right to review any such decision, report, or certification either upon its own initiative or upon the petition of a party or intervenor demonstrating *to the satisfaction of the Board* the desirability of having the matter reviewed at the top level." H.R. Doc. No. 152, 87th Cong. 1st Sess. (1961). (Emphasis supplied.) The record before us contains nothing to establish that the Board was required to grant review. We are furnished with no facts which show an abuse of discretion on the Board's part. There is no statute or regulation which required the Board to affirmatively grant the petition to review. We find ourselves in complete agreement that "Section 302.28(a) (2) [*supra*] has been revised to make it clear that review by the Board of the initial decision is committed to its discretion. Thus, the grounds specified in that section merely prescribe the contents of petitions for discretionary review and the Board remains free to decline to exercise its right of review if it believes that review is not required in the public interest." Board Order No. PR 59, 27 Fed.Reg. 854 (1962).

The Board's action in Orders E–24998 and E–24999 is affirmed.

Affirmed.