**FEDERAL TRADE COMMISSION**

**v.**

**Walter E. CROWTHER, Vice-President and Secretary, Louisville Cement Company, Appellant.**

**FEDERAL TRADE COMMISSION**

**v.**

**William L. LUCAS, Secretary and Treasurer, Martin Marietta Corporation, Appellant.**

**FEDERAL TRADE COMMISSION**

**v.**

**GENERAL PORTLAND CEMENT COMPANY, Appellant.**

**FEDERAL TRADE COMMISSION**

**v.**

**Worth LOOMIS, Vice President-Administration and Secretary, Medusa Portland Cement Company, Appellant.**

**Nos. 23924–23927.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1970.

Decided June 25, 1970.

Mr. Terrence C. Sheehy, Washington, D. C., with whom Mr. Harold F. Baker, Washington, D. C., was on the brief, for appellants.

Mr. Leonard Schaitman, Attorney, Dept. of Justice, with whom Messrs. Thomas A. Flannery, U. S. Atty., and Morton Hollander, Attorney, Dept. of Justice, were on the brief, for appellee.

Before McGOWAN, TAMM and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge.

This appeal is from a judgment of the District Court granting enforcement, at the instance of the Federal Trade Commission, of certain subpoenas *duces tecum* issued in a proceeding initiated by the Commission to challenge, under Section 7 of the Clayton Act (15 U.S.C. § 18), the acquisition by Lehigh Portland Cement Company of a number of ready-mix concrete companies. Appellants are not parties to that proceeding. They are, rather, concrete producers who are actual or potential competitors of Lehigh, to whom, at Lehigh's request, the Commission directed the subpoenas in question calling for business information normally regarded as confidential. Their objection is not to any disclosure at all, but to the allegedly discriminatory manner in which disclosure is sought to be compelled. Because we think the Commission has failed to come to grips adequately with the claim of discriminatory treatment, we vacate the judgment of the District Court and remand the case to the Commission for further consideration.

I

The subpoenas in suit commanded appellants to appear at the complaint proceeding against Lehigh as witnesses and to produce certain records and information relating to their individual business operations. Motions to quash resulted in a stipulation between appellants and Lehigh, as well as some modifications in the scope of the subpoenas by the hearing examiner. What remained at issue

was the request of appellants that certain information covered by the subpoenas [1] be presented to an independent accounting firm for organization and compilation in such a way that, although the information would be available in its entirety, it could not be attributed to any identifiable reporting company.

The examiner was of two minds about this request. He noted that what Lehigh "here is asking for [is] rather sensitive information from its own competitors, or potential competitors, who as such have been allegedly damaged by respondent's acquisitions of ready-mix concerns purchasing cement." He remarked the essential similarity of the situation to an earlier proceeding also involving a challenge by the Commission to the acquisition by a cement producer of ready-mix companies where the respondent had sought like information from competitors, and in which the Commission had provided for submission of the information in precisely the manner requested by appellants here. Matter of Mississippi River Fuel Corporation, F. T.C. Dkt. No. 8657. He stated his feeling to be that the *Mississippi* formula devised by the Commission, "however commendable [an] effort to insure confidentiality * * * within the bounds of the law," does "impair substantially the usefulness of the information to the party" requesting it.[2] He concluded, however, that the clarity of the Commission's command in *Mississippi*, with its emphatic rejection of any right in a respondent "to rummage at will through the confidential business files" of its ac-

tual or potential competitors, was such as to constrain him to grant appellant's request.

The Commission was not impressed with this deference to its decision of two years before. It characterized its action in *Mississippi* as having "merely held that under the facts of that proceeding the treatment ordered was appropriate." It did not indicate in what particulars it thought the facts before the examiner were different from those in *Mississippi*, but, on a wave of generalities about the need to strike a balance in each case between the interests of "the respondent's need to know sensitive information and the third party's need to protect the same valuable information from his competitors," it floated the case back to the examiner for reexamination.

Because the initial examiner was about to retire, a new examiner, by consent of the parties, undertook this task. There were no new submissions of either evidence or argument. The new examiner denied appellant's request for *Mississippi* treatment, and his reasons for doing so are confined to the following:

> " * * * The undersigned examiner has carefully reviewed all of the documents above referred to and is of the opinion * * * that all of the information requested by the respondent be submitted without *Mississippi River* treatment. Counsel for respondent has made it abundantly clear that he will not disclose the information supplied.[2] "

Footnote 2 so inserted by the examiner in his opinion consists solely of the cita-

---

1. The information covered a variety of matters, including options held by appellants to acquire companies purchasing cement from them; debts owing from purchasers to appellants; purchasers' debts to third parties guaranteed by appellants; lease, sale, or other arrangements between appellants and purchasers relating to facilities or equipment used by the latter; capital contributions by appellants to purchasers; and interlocking personnel arrangements between appellants and purchasers.

2. The examiner did not specify the exact nature of this impairment except to state that it appeared to be "in respect to respondent's right to general discovery, *i. e.*, for cross-examination and general purposes." He referred in this regard to a 1967 amendment of the Commission's Rules, Section 3.34(b) (2), which he characterized as enlarging the discovery right to serve general purposes broader than that of securing information actually to be used as evidence in the proceeding.

tions of Commission proceedings in 1961 and 1964 involving protective orders. Those proceedings are not referred to in the Commission's subsequent opinion or in its brief in this court. The documents described by the examiner as having been reviewed by him refer expressly only to the subpoenas, the motions to quash, the first examiner's rulings, the appeals from those rulings and the answers thereto, and the Commission's order of remand.[3]

The Commission approved this altered disposition of the matter. After describing the ordering provisions of that disposition, it characterized the new examiner as having "carefully considered our previous opinion," and as having "carefully attempted to consider the particular facts of this discovery dispute and * * * tailored a protective order which attempts to fully and fairly balance the potentially conflicting needs of respondent and the third parties."[4] The Commission's only descent to the level of the concrete is a reference to the order as preventing "the alleged injuries which might flow from disclosure of the data to Lehigh or to the trade at large by restricting its availability to [Lehigh's] counsel alone."

The petition for enforcement in the District Court was heard on the papers and oral argument of counsel. The court's findings of fact are made up of a review of the proceedings at the Commission level, and its legal conclusions are that the matter was one reposing in the Commission's discretion, which was not abused. Its reference to *Mississippi* is restricted to the conclusion that it does not preclude the Commission from prescribing a differing treatment in another case, provided it is fair.

II

In this court it is argued at length on behalf of the Commission that *stare decisis* has traditionally been thought to be a principle of palpably less rigorous applicability in the field of administrative law than elsewhere, and that the Commission is not bound to decide all future cases in the same way as it has decided a like one in the past. These are surely unexceptionable propositions, of the truth of which this court in especial has no need of persuasion. Our consciousness of the admonition of the Supreme Court in FCC v. WOKO, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946), that a regulatory agency is not "bound * * * to deal with all cases

---

3. The ordering provisions of the examiner's denial are as follows:

IT IS HEREBY ORDERED that to assure that counsel for Lehigh Portland Cement Company will not use the data subpoenaed for an improper competitive purpose, the documents and information furnished by third parties to the attorney for Lehigh in response to the subpoenas as modified by Examiner Kaufman's orders dated May 29, 1968, and June 14, 1968, shall not be disclosed to Lehigh personnel.

IT IS FURTHER ORDERED that the data and documents produced by third parties pursuant to the subpoenas shall be disclosed or made available by respondent's counsel to counsel supporting the complaint only to the extent that the information is to be used in respondent's defense.

IT IS FURTHER ORDERED that no copies shall be made of any of said materials, except those to be used as exhibits in the hearing in the above matter and copies may be made and used only for such purpose; That said materials furnished by third parties and any copies made of aforesaid (except copies of originals which may become a part of the official record in this matter), shall be returned to third parties promptly following the close of the hearings in the above matter.

IT IS FURTHER ORDERED that, until further order of this examiner, the information furnished by third parties under the subpoenas is not to be made public.

4. In that opinion the Commission had enumerated five specific factors which "an examiner should consider" in order to reach "a fair resolution of a business secret claim." Since the new examiner made no reference to any of them, a captious observer might view this characterization of his effort as on the extravagant side.

at all times as it dealt with some that seem comparable," has been demonstrated repeatedly.[5]

█ Neither are we, however, unmindful of our duty under the Administrative Procedure Act (5 U.S.C. § 706) to be alert to agency action which is "arbitrary" or "capricious," or to take note of those situations where, in the words of the Supreme Court, "the Commission has not adequately explained its departure from prior norms and has not sufficiently spelled out the legal basis of its decision." Secretary of Agriculture v. United States, 347 U.S. 645, 652–653, 74 S.Ct. 826, 831, 98 L.Ed. 1015 (1954). *See* Greensboro-High Point Airport Authority v. CAB, 97 U.S.App.D.C. 358, 231 F.2d 517 (1956), and Herbert Harvey v. NLRB, 128 U.S.App.D.C. 162, 385 F.2d 684 (1967).

█ A judicial disposition to accord an administrative agency wide latitude in adjusting its regulatory policies from case to case does not dispense with the necessity of adequate explication of the reasons why such alteration or adaptation may be seen to be rational and to escape the domain of the seemingly arbitrary. Judicial review of agency action otherwise becomes meaningless and incapable of fulfilling the Congressional purposes in providing it. *See* Burlington Truck Lines v. United States, 371 U.S. 156, 167–168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), and NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 443, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965).

█ The question immediately before us is not whether the Commission could properly abandon the *Mississippi* formula so lately devised and utilized by it in a set of circumstances closely comparable to the one at hand, but whether the Commission has sufficiently identified and articulated its reasons for doing so. The facts have that degree of parallelism which entitles both appellants and ourselves to a fuller explanation from the Commission, and not from its counsel in this court, as to why the *Mississippi* approach should be jettisoned without giving credence to the charge that similar supplicants receive dissimilar dispensations. If the Commission thought it important in 1966 to design a method of purveying confidential business information which would elicit and expose the information in full but protect the competitive position of its source, surely it should explain with some care why that method is no longer justifiable in an identical proceeding in 1968.[6]

Certainly it is not enough to point out, as counsel for the Commission have in this court, that the cases involve different parties and different markets. The first simply defines the problem without resolving it. As for the second, we have no basis for knowing that the cement business is so different in two geographical regions that revelation of confidential business information to a competitor in the one creates none of the handicaps attendant upon disclosure in the other. In any event, this matter of disparate markets is counsel's rationalization, not the Commission's. *See* SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

The one asserted factual distinction between *Mississippi* and this case which

---

5. Giant Food, Inc. v. FTC, 116 U.S.App. D.C. 227, 233, 322 F.2d 977, 983 (1963); James S. Rivers, Inc. (WJAZ) v. FCC, 122 U.S.App.D.C. 29, 351 F.2d 194 (1965); Capitol International Airways v. CAB, 129 U.S.App.D.C. 187, 392 F.2d 511 (1968). *And see* William N. Feinstein & Co. v. United States, 317 F.2d 509, 512 (2nd Cir. 1963). The point is discussed in 2 Davis, Administrative Law, Section 17.07 (1958 ed.).

6. Counsel for the Commission point in their brief to a case, decided by it at about the same time as the one before us, in which it also abandoned the *Mississippi* formula, Matter of Koppers Company, Inc., Dkt. No. 8755, and in which enforcement was granted in the District Court, FTC v. United States Pipe and Foundry Company, 304 F.Supp. 1254, decided October 3, 1969. We are not further informed about this matter, but it is obvious that the mere existence of such a ruling does not affect our view of the record before us.

is pressed most strenuously upon us by counsel for the Commission is that one of the lawyers for the respondent in *Mississippi* to whom disclosure would have been made was house counsel, whereas the examiner's order here limited disclosure to independent counsel who undertook by stipulation not to disclose the information to anyone except as it might prove necessary to use it as defense matter in the adjudicatory hearing. And it is true that the Commission referred briefly in its opinion to the restriction of the information's availability "to respondent's counsel alone."

We note, parenthetically, that neither the Commission nor the examiner was at pains to differentiate expressly between house counsel, on the one hand, and "respondent's counsel," on the other. The differentiation may well be significant, but it is hard for us to say how vital it appeared to be to the Commission. If such a distinction was an important element in the Commission's resolution of *Mississippi* itself, it is at least curious that the Commission's opinions in that case, both initially and on reconsideration, are devoid of any reference to it. Respondent there challenged the use of the independent accounting firm device only upon the ground that such a firm would not know whether the information supplied to it was complete or accurate, and would accordingly raise up the danger that the witness might withhold or distort relevant matter.

Thus the claim in *Mississippi* appears to have been not that the identity of each company giving the particular information was important in itself, but that the unidentified company would somehow be enabled to perjure itself with impunity in its responses to the subpoena. The Commission, not surprisingly, gave this argument short shrift indeed.[7] What is surprising is that the Commission, having expressed itself so clearly, not to say vehemently, on the merits of the *Mississippi* formula should now abandon it with a reticence strikingly in contrast with the expansiveness of its earlier pronouncement.

Counsel for the Commission emphasize that independent counsel have asserted that they will not disclose the information to Lehigh personnel, but only to technical experts not regularly employed by Lehigh. Such counsel have also represented that, if and when they feel compelled to put the information in evidence at the adjudicatory hearing, they will not oppose a request by appellants for *in camera* treatment. It is one thing, however, for confidential business information to become available, even on this limited basis, with such information attributed to the particular company, and quite another to be under the shield of the *Mississippi* formula, which assures that such attribution can never be known under any contingency except to the independent accounting firm. Once supplied in the form presently ordered, there can of necessity never be the same degree of assurance that the information will not come within the ken of the respondent-competitor. Moreover, the mere undertaking by Lehigh counsel that they will not oppose *in camera* treatment at the hearing is no guarantee that it will be accorded. There appear to be other parties to the proceeding as

---

7. In its opinion denying reconsideration in *Mississippi*, the Commission said:

"Nor is there any reason to believe that responses to the subpoenas will be less complete or less candid because the responses are directed to an accounting firm rather than to respondent's counsel. Because of the overlapping nature of the subpoenas, the accounting firm will be as capable as respondent's counsel of detecting incomplete responses. In essence, respondent is seeking the right to rummage at will through the confidential business files of the subpoenaed firms, many of which are now, or may be in the future, its competitors. This it is not entitled to do. In order to avoid any possibility that the data claimed to be confidential will be improperly used, it is necessary that material submitted in response to the subpoenas be presented to respondent's counsel in such manner that no individual company's confidential arrangements will be revealed."

well, and the matter is one for the sound discretion of the examiner in the first instance, subject to review by the Commission.

What remains essentially unexplained is why the *Mississippi* approach, with its certain protection against individual attribution, is now thought by the Commission to be inadequate or contrary to the public interest. We do not intimate that the Commission could under no circumstances properly arrive at such a conclusion in the course of a balancing process, but it is not enough to explain the Commission's changed feeling by merely asserting that it has struck a new balance.[8] Rationality in administrative adjudication requires something more than that.

The judgment of the District Court is vacated and the case remanded to the Commission for further consideration in the light hereof.

It is so ordered.

8. Counsel for the Commission in this court make much of the circumstance that the amendment of the Commission's Rules supervened between *Mississippi* and this case. *See* Note 2, *supra*; and *compare* Rule 3.34(b) (2), 32 Fed.Reg. 8452 *with* Rules 3.10, 3.17, 28 Fed.Reg. 7088-9. The Commission itself, however, has not referred to this rule change in either its opinion of remand or its opinion approving the second examiner's ruling. At first blush, it would appear that enlarging discovery rights beyond information sought for actual use as evidence would present special problems in the case of witnesses subpoenaed at the instance of a respondent-competitor.