## WOLLENSAK *v.* REIHER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued April 14, 15, 1885.—Decided May 4, 1885.

The question whether delay in applying for a reissue of a patent has been reasonable or unreasonable is a question of law for the determination of the court.

The action of the Patent Office, in granting a reissue, and deciding that from special circumstances shown, it appeared that the applicant had not been guilty of laches in applying for it, is not sufficient to explain a delay in the application which otherwise appears unreasonable, and to constitute laches.

When a reissue expands the claims of the original patent, and it appears that there was a delay of two years, or more, in applying for it, the delay invalidates the reissue, unless accounted for and shown to be reasonable.

A bill in equity which sets forth the issue of a patent, and a reissue with expanded claims after a lapse of two or more years, and states no sufficient explanation of the cause of the delay, presents a question of laches which may be availed of as a defence, upon general demurrer for want of equity.

The facts which make the case are stated in the opinion of the court.

*Mr. L. L. Bond (Mr. Ephraim Banning* and *Mr. Thomas A. Banning* were with him) for appellant.

*Mr. Charles T. Brown* submitted on his brief for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity to restrain by injunction the alleged infringement by the defendant below of reissued letters patent

No. 10,264, issued to the complainant December 26, 1882, upon the surrender of original letters patent No. 148,538, dated March 10, 1874, granted to the complainant for a new and useful improvement in transom lifters. There was exhibited with the bill, as parts thereof, copies of the original and reissued letters patent. The defendant demurred to the bill for want of equity, the demurrer was sustained, and the bill dismissed. From that decree this appeal was taken.

The original patent was confined to two claims, which are also the first two in the reissued patent. The latter, which, in its specification and drawings, is substantially the same with the original, adds seven additional claims, making nine in all. Of these, the bill alleges infringement as to the third, fourth, fifth, sixth and ninth.

The bill, after averring the issue of the original patent, and referring to the copy set out as an exhibit, contains the following averments:

"That said letters patent, being afterwards found to be inoperative or invalid by reason of an insufficient or defective specification, which insufficiency or defect had arisen through inadvertence, accident or mistake, and without any fraudulent or deceptive intention on the part of your orator, were afterwards surrendered and duly cancelled by the Commissioner of Patents: that thereupon, and upon due application therefor, reissued letters patent of the United States, No. 10,264, were issued to your orator, dated the 26th day of December, 1882, granting to him, his heirs or assigns, for the term of seventeen years from the said 10th day of March, 1874, the full and exclusive right of making, using, and vending to others to be used, the said invention, as by reference to said reissued letters patent here in court to be produced, and a copy of the specification and drawings of which is hereto attached, will more fully appear; that said reissued letters patent were applied for in good faith and not for any fraudulent or improper purpose; that, as your orator verily believes, no other person, firm, or corporation, not acting under his authority, ever began the manufacture, sale, or use of transom lifters containing or embodying said inventions or improvements until long after your

orator had consulted counsel and taken steps towards applying for said reissue, and until long after your orator had applied for and obtained a reissue of his previous patent on transom lifters, having broader claims than any now contained in said reissue No. 10,264, that, in making said application for said last-mentioned reissue, your orator presented to the Patent Office a full, sworn statement of facts and circumstances connected with his applying for and obtaining said original patent No. 148,538, and with his delay in applying for said reissue; that at the first, said reissue application was rejected, on the ground that such statement did not show or furnish any sufficient explanation or excuse for said delay, and that your orator had lost his rights to such a reissue by reason thereof, the examiner citing *Miller* v. *Brass Company*, 104 U. S. 350, and other cases; that, on appeal, said decision or rejection was reversed by the examiners-in-chief constituting the Patent Office Board of Appeal; that, in a long and full opinion, said examiners-in-chief expressly held that your orator had sufficiently and satisfactorily explained said delay and was still entitled to such a reissue, and that a part of said opinion, referring to claims appearing in said reissue, and now in controversy, was as follows:

"'All the above claims, moreover, have been rejected upon a supposed legal bar to enlargement of claim, found in certain recent decisions of the courts, mainly of the Supreme Court of the United States, on which the other decisions cited are based. . . . We find, upon review, that there was a grave defect in applicant's patent and claims, whereby it was inoperative to protect the invention disclosed by him, to the full extent to which he was entitled. . . . We do not find any evidence of such laches or delay, after ascertaining the defects of his patent, as to debar or estop him from the benefits of the statute. We do not find in his renewed application any attempt to enlarge the scope of his invention beyond what was originally disclosed, but, on the contrary, an attempt to secure protection for the invention contained in the patent.'"

For the purpose of deciding the question of law, arising on the demurrer to the bill, it is not necessary to set out the several claims in the original and reissued patents, with a view

to a comparison. It is sufficient to say, that it is not claimed that the defendant is guilty of an infringement of either of the claims in the original patent as repeated in the reissue; and it is admitted that the claims in the reissued patent, infringement of which is averred, are expansions of the original claims, not covered by them, but alleged, nevertheless, to be embraced within the invention as described in the original patent. This is to say, that if, as a matter of fact, the patentee was the first and original inventor of the parts and combinations covered by these claims, the language of the specification to the original patent would sufficiently embrace them.

It follows from this, that if, at the date of the issue of the original patent, the patentee had been conscious of the nature and extent of his invention, an inspection of the patent, when issued, and an examination of its terms, made with that reasonable degree of care which is habitual to and expected of men, in the management of their own interests, in the ordinary affairs of life, would have immediately informed him that the patent had failed fully to cover the area of his invention. And this must be deemed to be notice to him of the fact, for the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it.

Not to improve such opportunity, under the stimulus of self-interest, with reasonable diligence, constitutes laches which in equity disables the party, who seeks to revive a right which he has allowed to lie unclaimed, from enforcing it to the detriment of those who have, in consequence, been led to act as though it were abandoned.

This general doctrine of equity was applied with great distinctness to the correction of alleged-mistakes in patents, by reissues, in the case of *Miller* v. *Brass Company*, 104 U. S. 350. It was there declared, that where the mistake suggested was merely that the claim was not as broad as it might have been, it was apparent upon the first inspection of the patent, and, if any correction was desired, it should have been applied for immediately; that the granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and may justly be declared illegal and

void; that, in reference to reissues made for the purpose of enlarging the scope of the patent, the rule of laches should be strictly applied, and no one should be relieved who has slept upon his rights, and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent; and that when this is a matter apparent on the face of the instrument, upon a mere comparison of the original patent with the reissue, it is competent for the courts to decide whether the delay was unreasonable and whether the reissue was, therefore, contrary to law and void.

This doctrine has been reiterated in many cases since, and at the present term has been reconsidered and emphatically repeated as the settled law, in the case of *Mahn* v. *Harwood*, 112 U. S. 354, where it is said, by Mr. Justice Bradley, delivering the opinion of the court: "We repeat then, if a patentee has not claimed as much as he is entitled to claim, he is bound to discover the defect in a reasonable time, or he loses all right to a reissue; and if the Commissioner of Patents, after the lapse of such reasonable time, undertakes to grant a reissue for the purpose of correcting the supposed mistake, he exceeds his power, and acts under a mistaken view of the law; and the court, seeing this, has a right, and it is its duty, to declare the reissue *pro tanto* void, in any suit founded upon it." It was also there said, that, while no invariable rule can be laid down as to what is reasonable time within which the patentee should seek for the correction of a claim which he considers too narrow, a delay of two years, by analogy to the law of public use before an application for a patent, should be construed equally favorable to the public, and that excuse for any longer delay than that should be made manifest by the special circumstances of the case.

In the present case the delay in applying for the reissue was more than five years. No special circumstances to account for or excuse the delay are set out in the bill. In lieu of such a statement, the complainant avers that he presented to the Patent Office a full, sworn statement of facts and circumstances connected with his applying for and obtaining his original patent, and with his delay in applying for the reissue, and that

the examiners-in-chief decided that he had sufficiently and satisfactorily explained the delay, and was entitled to the re-issue. But this does not satisfy the law. The question as to whether the delay had been reasonable or unreasonable is for the court to determine, upon the special circumstances brought to its attention; and it cannot substitute the decision of the Patent Office upon that question for its own. The very question is, whether the Patent Office has decided rightly, and, as it is a question of power and jurisdiction, in which the delay shown is *prima facie* unlawful, it is incumbent on the party seeking to establish the jurisdiction of the Patent Office to grant the reissue, to show the facts on which it rests. In every case of a reissue, that office, either expressly or implicitly decides the question of diligence on the part of the patentee; and the grant of a reissue is a decision that the delay has not been un-reasonable. That, therefore, is the very question for judicial review, in every suit to enforce a reissued patent, in which the question is made; and, as we have seen, the settled rule of de-cision is, that if it appears, in cases where the claim is merely expanded, that the delay has been for two years, or more, it is adjudged to invalidate the reissue, unless the delay is accounted for and excused by special circumstances, which show it to have been not unreasonable.

When, therefore, the injunction bill sets out or exhibits both the original and the reissued patent, and it appears from in-spection that the sole object of the reissue was to enlarge and expand the claims of the original, and that a delay of two or more years has taken place in applying for the reissue, not ex-plained by special circumstances showing it to be reasonable, the question of laches is a question of law arising on the face of the bill, which avails as a defence, upon a general demurrer for want of equity.

This rule of equity pleading applies in analogous cases; as where, it otherwise appearing on the face of the bill that the claim is stale, or is barred by lapse of time, and it is sought to avoid the effect of such a bar, on the ground that the fraud complained of was concealed, and has been only recently dis-covered, it is necessary that "the particular acts of fraud or

concealment should have been set forth by distinct averments, as well as the time when discovered, so that the court may see whether, by the exercise of ordinary diligence, the discovery might not have been before made." *Beaubien* v. *Beaubien*, 23 How. 190; *Stearns* v. *Page*, 7 How. 819; *Moore* v. *Greene*, 19 How. 69; *Marsh* v. *Whitmore*, 21 Wall. 178, 185; *Godden* v. *Kimmell*, 99 U. S. 201; *Badger* v. *Badger*, 2 Wall. 87, 95; *Wood* v. *Carpenter*, 101 U. S. 135; *Landsdale* v. *Smith*, 106 U. S. 391.

The decree of the Circuit Court dismissing the bill for want of equity was correct and is

*Affirmed.*