## IVES v. SARGENT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

Argued December 15, 1886. — Decided January 10, 1887.

It is the duty of a patentee, receiving letters-patent for an invention, to examine them within a reasonable time to ascertain whether they fully cover his invention; and if he neglects so to do for the period of three years, and the real invention is then found to be infringed by a construction which is manufactured and sold without infringing the patent as originally granted, he must suffer the penalty of his own laches, and cannot, by means of a reissue, correct the error.

*Wollensak* v. *Reiher*, 115 U. S. 96, and *Mahn* v. *Harwood*, 112 U. S. 354, affirmed and applied.

The reissue No. 9901, dated October 18, 1881, of letters-patent No. 202,158, dated April 9, 1878, and granted to Frank Davis for an improvement in door-bolts is void, as containing new matter introduced into the specification, and as being for a different invention from that described in the original patent.

This was a bill in equity to restrain the infringement of letters-patent. The case is stated in the opinion of the court.

*Mr. H. T. Blake* for appellant.

*Mr. John S. Beach* for appellee.

Mr. Justice MATTHEWS delivered the opinion of the court.

This is a bill in equity filed by the appellant to restrain the alleged infringement of the complainant's rights, as the assignee of Frank Davis, of reissued letters-patent No. 9901, for an improvement in door-bolts. The original patent was No. 202,158, dated April 9, 1878. The application for the reissue was filed April 1, 1881, the reissued letters-patent being dated October 18, 1881. The alleged infringement is of the third and fourth claims. As the case turns wholly upon the validity of the reissued patent, it is important, for purposes of comparison, to set out the original and the reissue in parallel

columns. So much of the original as is excluded from the reissue is marked in brackets, and the additions made by the reissue are in italics. They are as follows:

| *Original.* | *Reissue.* |
|---|---|
| " Specification forming part of letters-patent No. 202,158, dated April 9, 1878. Application filed January 29, 1878. | " Specification forming part of reissued letters-patent No. 9901, dated October 18, 1881. Original No. 202,158, dated April 9, 1878. Application for reissue filed April 1, 1881. |
| *To all whom it may concern :* | *To all whom it may concern :* |
| Be it known that I, FRANK DAVIS, of North Adams, in the county of Berkshire and state of Massachusetts, have invented certain new and useful improvements in door-bolts; [and I do hereby declare that] the following is a [full, clear, and exact] description [of my invention, which will enable others skilled in the art to which it appertains to make and use the same, reference being had to the accompanying drawings, and to letters of reference marked thereon, which form a part of this specification.] | Be it known that I, FRANK DAVIS, of North Adams, in the county of Berkshire and state of Massachusetts, have invented certain new and useful improvements in door-bolts, *of which* the following is a description. |
| [This invention is an improvement] on letters-patent [No. 190,561,] granted to [the undersigned] May 8, 1877. | *The improvements are* on *the door-bolt, for which* letters-patent *were* granted to *me* May 8, 1877. |
| The [nature of said] invention consists [chiefly] in combining a cylindrical outer cas- | The invention consists in combining a cylindrical outer case with an inner *case,* con- |

Opinion of the Court.

ing with an inner [casing,] constructed. and recessed as hereinafter described, said [casings] combining to inclose the operating mechanism, and to form a fulcrum and guide therefor; [and] in combining, with said [casings,] a bolt, pitman, and [hub, so constructed and arranged as to operate in the same without pivot-pins or any additional devices, all as] hereinafter more fully [described] and claimed.

In the accompanying drawings Fig. 1 [represents the device as a whole] in perspective. Fig. 2 [represents] a perspective view of the inner [casing and contents.] Fig. 3 is a [detail] view of the bolt [and its attachments.] Fig. 4 is a detail view of the inner [casing.] Fig. 5 is a detail view of the outer casing.

[A designates a cylindrical metalic outer casing or sleeve, which is provided with opposite openings a a near its rear end, and with a hole $a^1$, for attachment by means of screw $a^2$ to inner casing B.

It is obvious that any known equivalent fastening may be

structed and recessed as hereinafter 'described, said *cases* combining to inclose the operating mechanism, and to form a fulcrum and guide therefor; in combining with said *cases* a bolt, pitman, and *crank; and in a pitman or connecting rod performing the functions of both pitman and spring, as the above are* hereinafter more fully *set forth* and claimed.

In the accompanying drawings Fig. 1 *shows the bolt* in perspective. Fig. 2 *is* a perspective view of the inner *case and portions of some of the working parts.* Fig. 3 is a view of the bolt, *spring and crank.* Fig. 4 is a detail view of the inner *case, and* Fig. 5 is a detail view of the outer case.

*To enable others to make and use my improvements in door-bolts, I will describe them in detail.*

*A, Figs.* 1 *and* 5, *is a cylindrical metallic outer case, having the holes a a near its rear end, and hole* $a^1$, *through which a screw* $a^2$, *Fig.* 1, *passes into the inner case B, to hold the two cases together. The inner cylindrical case, B, Figs.* 2 *and* 4, *is made to fit closely into*

substituted for said screw. Said casing A is preferably a mere shell of steel, but both the material and thickness can be considerably varied without departing from my invention.

*the outer case, and has on its front end a disk in which is the central opening,* b. *On its front end the flange* b¹ *is formed, against which the outer case comes. A slot,* b², *Fig. 4, extends from the disk*

Fig.1.

Fig.2.

Fig.3.

Fig.4.

Fig.5.

Inner casing B is of brass, cast-iron, or other cheap metal, and has such diameter as allows it to pass readily into said outer casing or sleeve, and to be conveniently withdrawn therefrom. It is provided at the front end with a disk, which has a central opening, b, for the passage of the bolt, and an annular flange, b¹ which

*on the front end the whole length of the case. Another slot,* b³, *opposite the slot* b², *extends backward from the end disk, as shown in Fig. 4. These slots leave the parts* b⁴ b⁴ *of the inner case, as shown in Fig. 4. A groove,* b⁶, *extends across the case between the parts* b⁵ *and* b⁸ *of the case. A longitudinal slot,* b⁷, *bisects this*

prevents it from being forced back too far within said exterior casing. The bottom of said inner casing B has a broad longitudinal slot, $b^2$, extending from end to end, and communicating with a similar longitudinal slot, $b^3$, in the top of said casing B, which extends about two-thirds of the length of said casing, beginning just behind said front disk. The interior of the forward part of said inner casing is thus entirely removed, leaving vertical walls $b^4$ $b^4$ on each side of the space thus produced. This space is separated by a transverse partition, $b^5$, from a transverse groove, $b^6$, in the bottom of which is a longitudinal slot, $b^7$. A transverse partition, $b^8$, at the rear of said groove and slot, forms part of the rear end of casing B, and has in its top screw-threaded hole or socket $b^9$ for the reception of fastening screw $a^2$.

C designates the door-bolt, having guide-pins $c$ on its side, and near its rear end a recess, $c'$, in which works the lower end of crank-arm D', formed in one piece with flat hub D. Said lower end of crank-arm D' is connected by pitman E to the front part of said bolt. Said hub D, when in position

groove and is cut through the case.

C, Fig. 3, is the bolt, made with the lugs $c$ $c$, only one of which is used. The projecting end is round, the part within the case is rectangular, one of the narrower sides fitting into the slot $b^2$, and the other into $b^3$. Its rear end is made narrower and thinner to make room for the crank, as shown in Fig. 3.

The crank D is made in the usual form, and is arranged in a position to bring the hole through its larger end in line with the groove $b^6$ on the inner case and with the openings $a$ $a$ in the outer case.

The pitman and spring E, Fig. 3, is a straight hard-drawn wire, and is connected to the bolt and crank by suitable pivotal connections. As shown in the drawings, its ends are bent at right angles to its length and pass into holes in the bolt and crank, the spring being made long enough for the purpose. The lug $c$ on the bolt is so arranged relative to the connections of the spring as to give it the required degree of tension or " set up," it is called. The tension bends the spring over the lug $c$, as shown in Fig. 3. The key has its shank square

for use, extends up through said slot $b^7$, so that its square or similarly shaped central hole is in a line with transverse groove $b^6$ of inner casing B; and opposite holes *a a* of outer casing A. The prismatic shank of the key is passed through said holes and groove, and operated as usual to shoot or draw the bolt.

I do not confine myself to the exact details of construction shown, as these may be somewhat modified in various ways without departing from the spirit of my invention.

The working parts of my mechanism are more firmly secured and more perfectly protected than in my former patent, as hereinbefore recited. I also deem the shape of my new hub and crank preferable for practical working.]

Having [thus] described my [invention], what I claim as new, and desire to protect by letters-patent, is —

· 1. The combination, with a door-bolt and operating mechanism, of a cylindrical exterior [casing,] and a recessed inner [casing,] said [casings] combining to inclose the operating mechanism, and to form a ful-

*to fit the hole in the crank, with a round part near the handle to turn in the case, as shown in Fig.* 1.

Having described my *improved bolt and its mode of operation,* what I claim as new, and desire to secure by letters-patent, is —

1. The combination, with a door-bolt and operating mechanism, of a cylindrical exterior *case* and a recessed inner *case,* said *cases* combining to inclose the operating mechanism, and to form a fulcrum and guide

crum and guide therefor, substantially as set forth.

2. The combination of [casing] A, having opposite holes *a a*, with inner [casing] B, having transverse groove $b^6$ and slot $b^7$, [flat hub] D, [having crank-arm D',] and the bolt and pitman, substantially as set forth.

3. [The combination of cylindrical outer casing A with inner casing B, having annular front flange $b^1$, side walls $b^4$ $b^4$, transverse partitions $b^5$ and $b^8$, transverse groove $b^6$, and slot $b^7$, said casings being securely fastened together and adapted to receive the bolt and working mechanism, substantially as set forth.] ''

therefor, substantially as set forth.

2. The combination of *case* A, having opposite holes *a a*, with inner *case* B, having transverse groove $b^6$ and slot $b^7$, *crank* D, and the bolt and pitman, substantially as set forth.

3. *The combination of the bolt C, provided with the lug c, pitman E, operating as a pitman and spring, and crank D to hold the bolt, substantially as set forth.*

4. *In a cylindrical door-bolt, the pitman E, arranged and adapted to operate as a pitman and spring, substantially as set forth.*"

It will be observed that the first and second claims of the reissued patent are substantially the same as the first and second claims of the original patent, but as there is no allegation or proof of any infringement by the appellee of either of these they may both be dismissed from further consideration. The third claim of the original patent is omitted from the reissue, its place being taken by the third and fourth claims of the latter. The whole question is, whether the patentee and his assignee are entitled, under the circumstances of the case, to claim the pitman E, operating as a pitman and spring in a door-bolt, as a distinct and separate invention, irrespective of its combination with the exterior and interior cases mentioned in the first and second claims. This right is affirmed by the appellant and denied by the appellee.

The invalidity of the reissued patent is maintained by the appellee on two grounds : 1st, that the reissue embraces a dif-

ferent invention in the third and fourth claims from any de- scribed or contained in the original specification; and, 2d, that, if it were otherwise, the patentee and assignee had, at the time of the application for a reissue, lost their rights to correct the defects in the original by their own laches. It was upon the latter of these grounds that the Circuit Court proceeded in dismissing the bill. The undisputed facts on this part of the case are stated by the Circuit Court in its opinion, and are as follows :

"The inventor, a carpenter by trade and not an educated man, invented the device in November, 1877, and applied, in January, 1878, to Mr. Terry, a patent solicitor in New Haven, to procure him a patent, specifying, as the invention to be patented, the pitman, which, in connection with the crank, held the bolt and answered the double purpose of pitman and spring. Terry, being in ill health, and, therefore, not then doing business, sent the case to his agent in Washington, with Davis's instructions. In due time the papers were returned to Terry and were signed by Davis, who read them and supposed that the application 'covered the spring, which he intended to be patented.' Terry did not read the application. The patent was received by Davis in April, 1878. It does not appear whether it was then examined or not. The plaintiff did not see the patent until after it was assigned to him, on May 28, 1879. Whether he then read it or not he does not know; but in the latter part of 1880, after the defendant had begun to infringe, he did read it, and supposed, from the drawings, that the pitman-spring, as a separate invention, was secured by the patent, until he was undeceived by Mr. Terry. In the spring of 1878 the plaintiff received from Davis a license to use the pitman-spring upon another than the patented bolt. In Sep- tember, 1880, Sargent & Co. commenced work upon the pat- terns for the infringing bolt, and made the first bolts Decem- ber 1, 1880." *Ives* v. *Sargent*, 21 Blatchford, 417.

The application for the reissue was not made until after the lapse of nearly three years from the date of the original patent; that is, from April 9, 1878, until April 1, 1881. It may be assumed, as the effect of the evidence, that Davis, in

describing to his solicitor, Terry, the invention which he wished to have patented, specifically designated and described the pitman-spring as his substantial invention, distinct from the combination of which it formed a part in the first and second claims of the patent. In his testimony on this point, in answer to the question, "What did you describe to him as the invention which you wished to have patented?" Davis states, "I explained to Mr. Terry that I had got the spring, answering for a spring, and also for turning the bolt, a pitman-spring. I didn't know the term at that time;" and also that he wished to have patented "this pitman-spring, and this guard, lever, and that purchase it had in holding the bolt out or back; also, in moving the bolt out and back." Terry, also, on the same point, says, that Davis "brought the invention or bolt to me and stated that he wanted to get it patented. He also stated what his invention was, as he considered it, that he wanted patented, and the thing that he wanted patented particularly was the pitman or connecting-rod, which answered the double purpose of pitman and spring, and in connection with the crank held the bolt when it was shoved out of the case and when it was drawn within the case." Terry also states that he sent "a letter of instructions with the model, setting forth Mr. Davis' wishes as he had expressed them to me." The specification, as prepared by the solicitor in Washington, was returned to Terry and by him exhibited to Davis, who signed the application, as he states, after he had examined it and supposed it to be right, "covering the spring which I intended to be patented." Mr. Terry states that he does not recollect whether he himself read over the specification and examined the claims at the time Mr. Davis signed the papers, or not. On this application the patent was issued, and it does not appear to have been read or examined by any of the parties in interest until after the appellee commenced making the bolts now alleged to be an infringement. It was then discovered for the first time that the original patent did not cover the claim as now made, and the reissue was obtained to effect that purpose.

It is admitted in argument by the counsel for the appellant

that there was negligence; it is contended, however, that it was not the negligence which in law is imputable to the paten-tee or the appellant, but the negligence of the solicitor employed by the patentee to obtain the patent. Counsel say, "it was the Washington solicitor's disobedience to instructions which caused the mistake, and Terry's neglect to revise the application before sending for Davis to sign it, which prevented its discovery."

The rule of diligence required in such cases, as the result of previous decisions of this court, is stated in *Wollensak* v. *Reiher*, 115 U. S. 96, 99, in these words: "It follows from this, that if, at the date of the issue of the original patent, the patentee had been conscious of the nature and extent of his invention, an inspection of the patent, when issued, and an examination of its terms, made with that reasonable degree of care which is habitual to and expected of men, in the manage-ment of their own interests, in the ordinary affairs of life, would have immediately informed him that the patent had failed fully to cover the area of his invention. And this must be deemed to be notice to him of the fact, for the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it. Not to improve such opportunity, under the stimulus of self-interest, with reasonable diligence, constitutes laches, which in equity dis-ables the party who seeks to revive the right which he has allowed to lie unclaimed from enforcing it to the detriment of those who have in consequence been allowed to act as though it were abandoned."

In *Mahn* v. *Harwood*, 112 U. S. 354, 362, it was stated, that, "If a patentee has not claimed as much as he is entitled to claim, he is bound to discover the fact in a reasonable time or he loses all right to a reissue; and if the Commissioner of Patents, after the lapse of such reasonable time, undertakes to grant a reissue for the purpose of correcting the supposed mis-take, he exceeds his power, and acts under a mistaken view of the law; the court, seeing this, has a right, and it is its duty, to declare the reissue *pro tanto* void in any suit founded upon it."

It is also settled that, while no invariable rule can be laid down as to what is a reasonable time within which the patentee should seek for the correction of a claim which he considers too narrow, a delay of two years, by analogy to the law of public use before an application for a patent, should be construed equally favorable to the public, and that excuse for any longer delay than that should be made manifest by the special circumstances of the case. *Wollensak* v. *Reiher*, 115 U. S. 96, 100; *Mahn* v. *Harwood*, 112 U. S. 354, 363.

In the present case no special circumstances in excuse for the delay are alleged. The excuse proffered is simply an attempt to shift the responsibility of the mistake, as originally made, from the patentee to his solicitor; but no excuse is offered why the patentee did not discover the negligence and error of his solicitor in due time. On the contrary, he assumed, without examination, that the specification and claims of his patent were just what he had desired and intended they should be, and rested quietly in ignorance of the error and of his rights for nearly three years, and then did not discover them until after others had discovered that he had lost the right to repair his error by his neglect to assert it within a reasonable time.

We are, therefore, of opinion that the Circuit Court was clearly in the right in deciding the reissue void as to the third and fourth claims, on the ground that the right to apply for it had been lost by the laches of the patentee and his assignee.

We are also of opinion, however, that the reissue is void on the other ground, viz., that it contains new matter introduced into the specification, and that it is not for the same invention as that described in the original patent. In support of the reissued patent, on this ground, it is contended, on the part of the appellant, that the invention of the pitman-spring device is shown in the drawings, which are the same both in the original and the reissued patents. All that can be said in respect to the drawings is, that they show the pitman-spring device as a part of the bolt intended to be covered by the patent, and described as a combination of which that device forms a part. There is nothing whatever in the drawings to

show that the patentee claimed to be the inventor of that part separate from the combination, as a distinct novelty, useful by itself, or in any other combination; neither is it so described in the specification. The operating mechanism of the bolt, as distinct from the casings, which are described as forming a fulcrum and guide to it, is described as "a bolt, pitman, and hub so constructed and arranged as to operate in the same (said casings) without pivot pins or any additional devices." It is argued, on this language, that the only additional device usual in such cases is a spring, and that, therefore, the meaning of the specification is that no separate spring was required, and from that the inference is to be made that the pitman should operate both as a pitman and a spring; but this inference is entirely too obscure and remote. It is not obvious that the additional device referred to was a spring, and there is nothing in the language to suggest, what is clearly and fully expressed in the amended specification, that "the pitman and spring E, Fig. 3, is a straight hard-drawn wire, and is connected to the bolt and crank by suitable pivotal connections." So that in the original description there is nothing to show of what material the pitman is made so as to operate as a spring, and there is no assertion in it of its performing the double function of pitman and spring.

In this view, therefore, the case comes within the rule as stated in *Coon* v. *Wilson*, 113 U..S. 268, 277. There, as here, the lapse of time and laches based upon it were considered immaterial, because the reissued patent was for a different invention from that described in the original. "The description had to be changed in the reissue, to warrant the new claims in the reissue. The description in the reissue is not a more clear and satisfactory statement of what is described in the original patent, but is a description of a different thing."

We are, therefore, constrained to the conclusion that the addition of the third and fourth claims, with the corresponding alterations in the specification, is such an expansion of the invention as originally described as to destroy its identity, and to that extent to avoid the reissued patent.

*For these reasons, the decree of the Circuit Court is affirmed.*