# United States Court of Appeals for the Federal Circuit

---

(Serial No. 11/503,541)

## IN RE ERIK P. STAATS AND ROBIN D. LASH

---

2010-1443

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: March 5, 2012

---

JOHN M. WHEALAN, of Silver Spring, Maryland, argued for appellants. Of counsel on the brief were JEFFREY A. LAMKEN and LUCAS M. WALKER, MoloLamken LLP, of Washington, DC, ROBERT A. HULSE, Fenwick & West, LLP, of San Francisco, California, and RICHARD J. LUTTON, JR., Apple Inc., of Cupertino, California.

WILLIAM LAMARCA, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor, and JANET GONGOLA, Associate Solicitor.

---

Before DYK, O'MALLEY, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK. Concurring opinion filed by *Circuit Judge* O'MALLEY.

DYK, *Circuit Judge.*

Appellants Erik P. Staats and Robin D. Lash (collectively "Staats") appeal a decision of the Board of Patent Appeals and Interferences ("Board"). The Board rejected claims 12-32 of Staats's reissue application as being broadened by a reissue application outside of the two-year time limit imposed by 35 U.S.C. § 251. *See Ex parte Staats* ("*Board Decision*"), No. 2009-007162 (B.P.A.I. Apr. 26, 2010). We reverse and remand.

## BACKGROUND

This case requires us to construe the reissue statute and the limits it places on broadening reissues. The statute provides for broadening reissue patents:

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent, . . . reissue the patent . . . for the unexpired part of the term of the original patent.

35 U.S.C. § 251. But it imposes a two-year time limit, providing:

> No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

*Id.* We must decide whether the Board correctly held that a broadening reissue application filed outside of the two-

year period is not timely if it is not related to an earlier application filed within the two-year period. We hold that the Board's approach is contrary to our precedent.

I

On April 1, 1996, Staats filed an application for a patent titled "Isochronous Channel Having a Linked List of Buffers" with the United States Patent and Trademark Office ("PTO"). Based on this application, U.S. Patent Number 5,940,600 ("'600 patent") issued to Staats on August 17, 1999. The '600 patent described improvements to the management of isochronous data transfers such as the transfer of real-time video data from one component in a computer system to another component in the computer system. The prior art managed isochronous data transfers with dedicated software drivers on a computer's central processing unit ("CPU") that ran to the exclusion of all other processes on the CPU. In the prior art, the CPU would "spend all of its time servicing the isochronous data transmissions," even during portions of the CPU's computing cycles when no isochronous data was being transferred. '600 patent, col.2, ll.1-4. The '600 patent described a first embodiment, which used a "linked list of buffers" corresponding to specific locations on the system's display to implement an "interrupt" system. In this first embodiment, the CPU was interrupted when it received isochronous data, but was able to perform other tasks during portions of computing cycles when no isochronous data was being transferred. Thus, in contrast to the prior art, isochronous data transfers did not prevent the CPU from performing other tasks such as responding to menu-level instructions from the user or executing commands from other applications.

The '600 patent also disclosed a second embodiment, which established an isochronous data channel directly

between a sender node and a receiver node, not including the CPU itself. The second embodiment included, for example, the establishment of an isochronous channel directly between a video camera and a Video Cassette Recorder ("VCR"), without the channel's passing through the CPU. Because the isochronous data path bypassed the CPU, the second embodiment did not require the use of the "linked list of buffers" in order to allow the CPU to run other tasks. Though both the first embodiment and the second embodiment were described in the specification, each of the claims in the '600 patent was directed to the first embodiment and specifically recited a "linked list of buffers."

Because the '600 patent issued on August 17, 1999, the two-year period for filing a broadening reissue application expired on August 17, 2001. Within that window, on August 17, 2001, Staats timely filed a first broadening reissue application relating to the first embodiment described in the specification. A declaration stated that the broadening reissue application was for "failure to claim or to further claim subject matter disclosed in the specification pertaining to a method for handling data transmitted on an isochronous channel using a *linked list of buffers* . . . ." J.A. 10 (emphasis added). The first reissue patent, US RE38,641 E, was issued on October 26, 2004, with each of the new claims 12-17 directed to a process and specifically reciting "a linked list of buffers." J.A. 9-10.

While the first broadening reissue application was pending, and outside the two-year period, Staats filed a second broadening reissue application on May 12, 2004, as a continuation of the first broadening reissue application. Similar to the first broadening reissue application, the second broadening reissue application only addressed errors related to the first embodiment, that is, errors

"pertaining to a method for handling data transmitted on an isochronous channel using a *linked list of buffers*." J.A. 11 (emphasis added). The second reissue patent, US RE 39,763 E, issued on August 7, 2007.

While the second broadening reissue application was pending, but almost seven years after the original '600 patent issued, and well outside of the two-year period, Staats filed a third broadening reissue application on August 11, 2006, as a continuation of the second broadening reissue application. During prosecution of the third broadening reissue application, Staats added broadened claims 12-32 on June 11, 2007, almost eight years after the original grant of the '600 patent. Claims 12-32 were directed toward the second embodiment that was described in the specification of the '600 patent, but which embodiment had not been previously claimed.

The patent examiner recognized that he was bound by our precedent *In re Doll*, 419 F.2d 925 (C.C.P.A. 1970). *Doll* interpreted section 251 and explicitly rejected the PTO's argument that "claims presented in a reissue application filed within two years of the original patent grant are barred by 35 U.S.C. § 251 when such claims are not submitted until more than two years after the grant and are broader in scope than both the original patent claims and the broadening reissue claims originally submitted." *Id.* at 926, 928. But the examiner here nonetheless rejected the third reissue application under 35 U.S.C. § 251 after finding that the new broadened claims were "not related in any way to what was covered in the original broadening reissue." J.A. 119-20. On appeal, the Board also recognized that it was bound by *Doll*, but sustained the examiner's rejection. The Board found that the newly added broadening claims were in fact "directed to an invention that [was] independent and distinct" from that claimed in the original patent applica-

tion or the first broadening reissue application. *Board Decision*, slip op. at 25, 29. The Board explained that because Staats sought "to broaden the patented claims . . . in a manner pertaining to a different embodiment than that specified" in the original reissue application, the broadening now sought was "unforeseeable" from the original reissue application, and the "public notice function of § 251" had not been met. *Id.* at 21. Thus, the Board held that Staats's continuing reissue application could not "broaden patented claims beyond the statutory two-year period in a manner *unrelated* to the broadening aspect that was identified within the two-year period." *Id.* at 14, 29. Staats timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). We review issues of statutory construction de novo. *In re Serenkin*, 479 F.3d 1359, 1361 (Fed. Cir. 2007).

DISCUSSION

The parties do not dispute that the requirements of section 251 were satisfied if the two-year requirement was satisfied. They dispute only whether 35 U.S.C. § 251 allows a continuing reissue application to add broadened claims after section 251's two-year limit where the broadened claims are unrelated to the broadened claims filed within the two-year limit.

The law with respect to broadening reissues was originally developed by the Supreme Court under the Patent Act of 1870, which made no reference to broadening reissues. *See Miller v. Brass Co.*, 104 U.S. 350, 353 (1881). The Patent Act of 1870 provided:

> [W]henever any patent is inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery *more than he had a right to claim* as new, if the error has arisen by inadver-

> tence, accident, or mistake, and without any
> fraudulent or deceptive intention, the commis-
> sioner shall, on the surrender of such patent . . .
> cause a new patent for the same invention . . . to
> be issued to the patentee.

Patent Act of 1870, ch. 230, § 53, 16 Stat. 198, 205-06
(1870) (emphasis added). Despite the language of the
statute referring only to narrowing reissues, the Court in
*Miller* held that the statute allowed for broadening reis-
sues. 104 U.S. at 354-55. At the same time, the Court
recognized a rule of laches for broadening reissue applica-
tions filed more than two years after the issuance of the
original patent. *Id.* at 352. The *Miller* Court held that
"the claim of a specific device or combination, and an
omission to claim other devices or combinations apparent
on the face of the patent, are, in law, a dedication to the
public of that which is not claimed." *Id.* This dedication
to the public could not be avoided unless the patentee
proved "real inadvertence, accident, or mistake," which
"should be done with all due diligence and speed." *Id.*
Thus, for broadening reissues, "the rule of laches should
be strictly applied." *Id.* at 356.

This rule was followed in subsequent Supreme Court
cases, which recognized that a delay of longer than two
years should only be excused by "special circumstances."
*Wollensak v. Reiher*, 115 U.S. 96, 101 (1885); *see also*
*Mahn v. Harwood*, 112 U.S. 354, 363 (1884). When there
was "no ambiguity, and nothing to prevent the patentee
from seeing at once, on inspecting his patent, whether his
whole invention was claimed or not," the Supreme Court
saw "no possible excuse" for delay beyond two years.
*Mahn*, 112 U.S. at 363; *see also Elec. Gas-Lighting Co. v.
Bos. Elec. Co.*, 139 U.S. 481, 501-02 (1891); *Ives v. Sar-
gent*, 119 U.S. 652, 662 (1887).

The current version of the reissue statute was enacted in 1952 as part of an overall revision of the patent laws. The legislative history demonstrates that the amendment to section 251 was designed to codify prior Supreme Court authority, and in particular, the two-year limit. In a Senate Committee Report, Congress explained that "[a] two year period of limitation on applying for broadened reissues is added, codifying the present rule of decision with a fixed period." S. Rep. No. 82-1979, at 26 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2419. As one of the drafters of the 1952 Patent Act noted, "the courts [had] developed a rule of laches according to which a broadening reissue could not be applied for more than two years after the grant of the original patent except under extraordinary circumstances excusing the delay." P.J. Federico, *Commentary on the New Patent Act*, *reprinted in* 75 J. Pat. & Trademark Off. Soc'y 161, 205 (1993).[1]

The PTO argues that the language of the statute, requiring that the broadening reissue be "applied for within two years," does not suggest that the first broadening reissue can serve as a kind of placeholder for later applications. So too, it urges that the pre-1952 Supreme Court case law and the legislative history behind section 251 evince "one consistent theme," that "a patentee must promptly give the public adequate notice within two years of what the patentee intends to broaden." Appellee's Br. 22. According to the PTO, such adequate notice is not provided when the broadened claims presented outside the two-year period are "unrelated to," and thus "unfore-

---

[1] Federico's commentary, first published in 1954, has previously been cited by this court as constituting "an invaluable insight into the intentions of the drafters of the Act." *Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002).

seeable from," the subject matter identified for broadening within two years. *Id.*

The problem with the PTO's argument is that it is inconsistent with our predecessor court's decision in *Doll*. *Doll* arose after the 1952 Patent Act. In *Doll*, the PTO argued that the statute required "no reissue patent [] be granted enlarging the scope of the claims of the original patent, unless said claims are applied for within two years of the grant of the original patent." 419 F.2d at 927 (internal quotation marks omitted). Our predecessor court disagreed and concluded that section 251's two-year time limit applied to the filing date only of the first broadening reissue application. *Id.* at 928. Accordingly, *Doll* reversed the PTO's rejection of claims that were broader than those originally included with the appellant's timely filed first broadening reissue application and were presented for the first time in an amendment filed outside of the two-year period. *Id.*

The PTO argues that, while *Doll* is binding, it is distinguishable. The PTO urges that the broadened claims challenged in *Doll* were "related to the subject matter covered by the claims identified and broadened within the two-year window," and thus the public was adequately notified of Doll's later broadening. Appellee's Br. 31. The PTO argues that in contrast to *Doll*, the claims in dispute here "are directed to [an] unrelated, alternative embodiment that does not use a CPU or a 'linked list of buffers'" like the subject matter of the first embodiment covered by the claims identified and broadened within the two-year window. *Id.* Thus, according to the PTO, "the public was not timely notified of Staats' later broadening" in a manner consistent with section 251's public notice requirement. *Id.* at 33.

The PTO's argument is largely an argument that *Doll* should be limited to its specific facts. But the "necessary implications" of a case's holding are "of course not limited to the facts of that case." *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 442 (1985). Significantly, *Doll* itself made no distinction between related and unrelated claims. *Doll* simply held that section 251's time limit clearly applied only to the filing date of the first broadening reissue application itself. 419 F.2d at 928. This court has acknowledged *Doll*'s holding that after a broadening reissue application has been filed within the two year statutory period, an applicant is "not barred from making further broadening changes" after the two year period "in the course of [the] prosecution of the reissue application." *In re Graff*, 111 F.3d 874, 877 (Fed. Cir. 1997); *see also In re Fotland*, 779 F.2d 31, 34 (Fed. Cir. 1985). To be sure, subsequently filed continuation applications relate back to a previously filed application under 35 U.S.C. § 120 only if each successive continuation application was filed while its parent application was still pending. *See Encyclopedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010). However, we see no basis for limiting *Doll* to situations where later broadened claims are related to, or are directed to the same embodiment as in the original application. The PTO's approach is, moreover, unmanageable. Every claim must, by definition, be different in scope than the other claims of the patent, and it is difficult to distinguish one patent embodiment from another or to determine when a later claim is related to an earlier claim. A rule requiring that the new claims be related to the previously submitted claims, or be directed to the same embodiment, would be difficult to administer in a consistent and predictable way.

In short, this panel is bound by *Doll*. *See S. Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en

banc) (adopting the decisions of the CCPA as binding precedent); *In re Am. Fertility Soc'y*, 188 F.3d 1341, 1347 (Fed. Cir. 1999) (holding that an earlier precedential decision is binding precedent on later panels). If the PTO believes we should overrule *Doll*, that is a matter that must be presented to the en banc court.

Here, Staats's first broadening reissue application was filed within section 251's two-year limit. Under *Doll*, that is sufficient to satisfy the two-year requirement. We reverse the Board's rejection of claims 12-32 as being filed outside of the two-year statutory limitation and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

---

(Serial No. 11/503,541)

**IN RE ERIK P. STAATS AND ROBIN D. LASH**

---

2010-1443

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

O'MALLEY, *Circuit Judge*, concurring.

I concur in the judgment the majority reaches – the decision of the Board of Patent Appeals and Interferences ("the Board") in this case cannot stand. I do not join in the majority's reasoning, however. To the extent the majority opinion concludes that the only basis upon which to premise reversal is the existence of *In re Doll*, 419 F.2d 925 (C.C.P.A. 1970) in this court's repertoire of decided cases, the opinion is inadequate. To the extent the majority opinion is no more than a begrudging nod to *Doll*'s precedential effect with an invitation to reconsider that decision, the majority opinion is wrong. Indeed, it is wrong on multiple levels.

The plain language of 35 U.S.C. § 251, coupled with the legislative history, long-standing unambiguous regulations implementing the statute, all relevant case law, and common sense, all compel reversal in this case. *Doll*

is but one data point in that properly structured statutory analysis.

Section 251 permits an inventor to apply for a reissued patent whenever he believes his patent is "wholly or partly inoperative or invalid" due to defects in the specification or in the scope of the claim language employed. 35 U.S.C. § 251. Once a reissue is sought, the same provisions of Title 35 governing original patent applications – including those provisions permitting the filing of continuations and divisional applications – are "applicable to applications for reissue of a patent." *Id.* Other than limitations against introducing "new matter" into the application for reissue (a restriction not at issue here), the only other limitation on reissue practice set forth in § 251 is that the original reissue application be timely – i.e., filed within two years of the grant of the original patent. *Id.* Nothing on the face of § 251 restricts the nature of any later-filed continuing reissue applications or ties the substance of such continuations to the broadened claims specified in the initial application. Indeed, the United States Patent and Trademark Office (PTO) points to no statutory language – either in § 251 or elsewhere – to support the Board's ruling.

Like its text, nothing in the legislative history to § 251 indicates any desire to limit the way in which the provisions of Title 35 "relating to applications for patent shall be applicable to applications for reissue of a patent." *See* 35 U.S.C. § 251. The legislative history to the Patent Act of 1952, where section § 251 first appeared, spoke only to the desire to codify both the fact of reissue practice and the two year post grant time period within which such reissue practice must be initiated. *See* S. Rep. No. 82-1979, at 26 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2419; H.R. Rep. No. 82-1928, at 26 (1952) ("A two year period of limitation on applying for broadened reissues is

added, codifying the present rule of decision with a fixed period.").

Consistent with § 251's language and legislative history, all PTO governing rules and regulations have – for decades – made clear that any timely intent to broaden via reissue permits subsequent attempts to broaden via continuation practice authorized under Title 35. Thus, PTO Rule 175 requires only that "at least one error being relied upon as the basis for reissue" be identified in the oath accompanying a reissue application, clearly implying that other errors may be "relied upon" even if not identified. 37 C.F.R. § 1.175(a)(1). And, the PTO's own Manual of Patent Examining Procedure (MPEP) repeatedly makes clear that, "if intent to broaden is indicated in a patent reissue application within the two years, a broadened claim can be presented in a continuing reissue application after the two year period." MPEP § 1412.03 (8th ed. 8th rev. July 2010). This is true "even though the broadened claim presented after the two years is different than the broadened claim presented within two years." *Id.* The PTO's continuing public pronouncements regarding the operation of § 251, while inconsistent with the position it takes here, are consistent with the plain meaning of the statute and its legislative history.

The MPEP and PTO Rule 175 are, moreover, consistent with all relevant case law interpreting § 251. As the majority notes, *Doll* concluded that § 251's time limits are applicable only to the first broadening reissue application and do not, accordingly, bar further broadening changes thereafter. 419 F.2d at 928. This court has twice reaffirmed that reading of § 251, moreover. *See In re Graff*, 111 F.3d 874, 877 (Fed. Cir. 1997) ("The court in *Doll* simply held that the reissue applicant, in the course of prosecution of the reissue application, was not barred from making further broadening changes in the claims.");

*In re Fotland*, 779 F.2d 31, 34 (Fed. Cir. 1985) ("In *Doll* the Court of Customs and Patent Appeals held that when a broadening reissue application was on file within the two year period, the claims could be further broadened after the two year period."). As the majority opinion makes clear, the PTO's efforts to distinguish those cases so as to avoid the need to comply with their holdings stretch credulity.

In the end, the PTO ignores every step in a proper statutory construction analysis and falls back on policy concerns it claims allow it to ignore the face of § 251 and to disregard both its own and this court's pronouncements regarding the proper operation of that governing provision. Given the limited life of additional claims which can be sought through the type of continuing reissue practice at issue here, the protections afforded by the intervening rights provisions in 35 U.S.C. § 252, and the countervailing implementation concerns the PTO's new standard creates, however, the PTO's policy arguments are overstated – substantially so. Even if those policy statements were not overstated, they would be an insufficient reed upon which to rest such a sweeping change in the law.

I agree that the Board's decision and PTO rejection must be reversed, and the matter remanded for further processing of the appellant's third reissue application. To the extent the majority fails to conduct a full statutory analysis and to recognize that each step in such a proper analysis compels that result, however, I decline to join the majority's reasoning and write separately to point out the important gaps therein.