Opinion for the court filed by Circuit Judge DYK. Concurring opinion filed by Circuit Judge O’MALLEY.
DYK, Circuit Judge.
Appellants Erik P. Staats and Robin D. Lash (collectively “Staats”) appeal a decision of the Board of Patent Appeals and Interferences (“Board”). The Board rejected claims 12-32 of Staats’s reissue application as being broadened by a reissue application outside of the two-year time limit imposed by 35 U.S.C. § 251. See Ex parte Staats (“Board Decision”), No. 2009-007162, 2010 WL 1725728 (B.P.A.I. Apr. 26, 2010). We reverse and remand.
Background
This case requires us to construe the reissue statute and the limits it places on broadening reissues. The statute provides for broadening reissue patents:
Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent, ... reissue the patent ... for the unexpired part of the term of the original patent.
35 U.S.C. § 251. But it imposes a two-year time limit, providing:
No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.
Id. We must decide whether the Board correctly held that a broadening reissue application filed outside of the two-year period is not timely if it is not related to an earlier application filed within the two-year period. We hold that the Board’s approach is contrary to our precedent.
I
On April 1, 1996, Staats filed an application for a patent titled “Isochronous Chann.1 Having a Linked List of Buffers” with the United States Patent and Trademark Office (“PTO”). Based on this application, U.S. Patent Number 5,940,600 (“'600 pat *1352 ent”) issued to Staats on August 17, 1999. The '600 patent described improvements to the management of isochronous data transfers such as the transfer of real-time video data from one component in a computer system to another component in the computer system. The prior art managed isochronous data transfers with dedicated software drivers on a computer’s central processing unit (“CPU”) that ran to the exclusion of all other processes on the CPU. In the prior art, the CPU would “spend all of its time servicing the isochronous data transmissions,” even during portions of the CPU’s computing cycles when no isochronous data was being transferred. '600 patent, col.2, 11.1-4. The '600 patent described a first embodiment, which used a “linked list of buffers” corresponding to specific locations on the system’s display to implement an “interrupt” system. In this first embodiment, the CPU was interrupted when it received isochronous data, but was able to perform other tasks during portions of computing cycles when no isochronous data was being transferred. Thus, in contrast to the prior art, isochronous data transfers did not prevent the CPU from performing other tasks such as responding to menu-level instructions from the user or executing commands from other applications.
The '600 patent also disclosed a second embodiment, which established an isochronous data channel directly between a sender node and a receiver node, not including the CPU itself. The second embodiment included, for example, the establishment of an isochronous channel directly between a video camera and a Video Cassette Recorder (“VCR”), without the channel’s passing through the CPU. Because the isochronous data path bypassed the CPU, the second embodiment did not require the use of the “linked list of buffers” in order to allow the CPU to run other tasks. Though both the first embodiment and the second embodiment were described in the specification, each of the claims in the '600 patent was directed to the first embodiment and specifically recited a “linked list of buffers.”
Because the '600 patent issued on August 17,1999, the two-year period for filing a broadening reissue application expired on August 17, 2001. Within that window, on August 17, 2001, Staats timely filed a first broadening reissue application relating to the first embodiment described in the specification. A declaration stated that the broadening reissue application was for “failure to claim or to further claim subject matter disclosed in the specification pertaining to a method for handling data transmitted on an isochronous chann.1 using a linked list of buffers----” J.A. 10 (emphasis added). The first reissue patent, U.S. RE38,641 E, was issued on October 26, 2004, with each of the new claims 12-17 directed to a process and specifically reciting “a linked list of buffers.” J.A. 9-10.
While the first broadening reissue application was pending, and outside the two-year period, Staats filed a second broadening reissue application on May 12, 2004, as a continuation of the first broadening reissue application. Similar to the first broadening reissue application, the second broadening reissue application only addressed errors related to the first embodiment, that is, errors “pertaining to a method for handling data transmitted on an isochronous channel using a linked list of buffers.” J.A. 11 (emphasis added). The second reissue patent, U.S. RE 39,763 E, issued on August 7, 2007.
While the second broadening reissue application was pending, but almost seven years after the original '600 patent issued, and-well outside of the two-year period, Staats filed a third broadening reissue ap *1353 plication on August 11, 2006, as a continuation of the second broadening reissue application. During prosecution of the third broadening reissue application, Staats added broadened claims 12-32 on June 11, 2007, almost eight years after the original grant of the '600 patent. Claims 12-32 were directed toward the second embodiment that was described in the specification of the '600 patent, but which embodiment had not been previously claimed.
The patent examiner recognized that he was bound by our precedent In re Doll, 57 CCPA 822, 419 F.2d 925 (1970). Doll interpreted section 251 and explicitly rejected the PTO’s argument that “claims presented in a reissue application filed within two years of the original patent grant are barred by 35 U.S.C. § 251 when such claims are not submitted until more than two years after the grant and are broader in scope than both the original patent claims and the broadening reissue claims originally submitted.” Id. at 926, 928. But the examiner here nonetheless rejected the third reissue application under 35 U.S.C. § 251 after finding that the new broadened claims were “not related in any way to what was covered in the origin.1 broadening reissue.” J.A. 119-20. On appeal, the Board also recognized that it was bound by Doll, but sustained the examiner’s rejection. The Board found that the newly added broadening claims were in fact “directed to an invention that [was] independent and distinct” from that claimed in the original patent application or the first broadening reissue application. Board Decision, slip op. at 25, 29. The Board explained that because Staats sought “to broaden the patented claims ... in a manner pertaining to a different embodiment than that specified” in the original reissue application, the broadening now sought was “unforeseeable” from the original reissue application, and the “public notice function of § 251” had not been met. Id. at 21. Thus, the Board held that Staats’s continuing reissue application could not “broaden patented claims beyond the statutory two-year period in a manner unrelated to the broadening aspect that was identified within the two-year period.” Id. at 14, 29. Staats timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). We review issues of statutory construction de novo. In re Serenkin, 479 F.3d 1359, 1361 (Fed.Cir.2007).
Discussion
The parties do not dispute that the requirements of section 251 were satisfied if the two-year requirement was satisfied. They dispute only whether 35 U.S.C. § 251 allows a continuing reissue application to add broadened claims after section 251’s two-year limit where the broadened claims are unrelated to the broadened claims filed within the two-year limit.
The law with respect to broadening reissues was originally developed by the Supreme Court under the Patent Act of 1870, which made no reference to broadening reissues. See Miller v. Brass Co., 104 U.S. 350, 353, 26 L.Ed. 783 (1881). The Patent Act of 1870 provided:
[Wjhenever any patent is inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent ... cause a new patent for the same invention ... to be issued to the patentee.
Patent Act of 1870, ch. 230, § 53, 16 Stat. 198, 205-06 (1870) (emphasis added). Despite the language of the statute referring only to narrowing reissues, the Court in *1354 Miller held that the statute allowed for broadening reissues. 104 U.S. at 354-55. At the same time, the Court recognized a rule of laches for broadening reissue applications filed more than two years after the issuance of the original patent. Id. at 352. The Miller Court held that “the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed.” Id. This dedication to the public could not be avoided unless the patentee proved “real inadvertence, accident, or mistake,” which “should be done with all due diligence and speed.” Id. Thus, for broadening reissues, “the rule of laches should be strictly applied.” Id. at 356.
This rule was followed in subsequent Supreme Court cases, which recognized that a delay of longer than two years should only be excused by “special circumstances.” Wollensak v. Reiher, 115 U.S. 96, 101, 5 S.Ct. 1137, 29 L.Ed. 350 (1885); see also Mahn v. Harwood, 112 U.S. 354, 363, 5 S.Ct. 174, 28 L.Ed. 665 (1884). When there was “no ambiguity, and nothing to prevent the patentee from seeing at once, on inspecting his patent, whether his whole invention was claimed or not,” the Supreme Court saw “no possible excuse” for delay beyond two years. Mahn, 112 U.S. at 363, 5 S.Ct. 174; see also Elec. Gas-Lighting Co. v. Bos. Elec. Co., 139 U.S. 481, 501-02, 11 S.Ct. 586, 35 L.Ed. 250 (1891); Ives v. Sargent, 119 U.S. 652, 662, 7 S.Ct. 436, 30 L.Ed. 544 (1887).
The current version of the reissue statute was enacted in 1952 as part of an overall revision of the patent laws. The legislative history demonstrates that the amendment to section 251 was designed to codify prior Supreme Court authority, and in particular, the two-year limit. In a Senate Committee Report, Congress explained that “[a] two year period of limitation on applying for broadened reissues is added, codifying the present rule of decision with a fixed period.” S.Rep. No. 82-1979, at 26 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2419. As one of the drafters of the 1952 Patent Act noted, “the courts [had] developed a rule of laches according to which a broadening reissue could not be applied for more than two years after the grant of the original patent except under extraordinary circumstances excusing the delay.” P.J. Federico, Commentary on the New Patent Act, reprinted in 75 J. Pat. & Trademark Off. Soc’y 161, 205 (1993).[1]
The PTO argues that the language of the statute, requiring that the broadening reissue be “applied for within two years,” does not suggest that the first broadening reissue can serve as a kind of placeholder for later applications. So too, it urges that the pre-1952 Supreme Court case law and the legislative history behind section 251 evince “one consistent theme,” that “a patentee must promptly give the public adequate notice within two years of what the patentee intends to broaden.” Appellee’s Br. 22. According to the PTO, such adequate notice is not provided when the broadened claims presented outside the two-year period are “unrelated to,” and thus “unforeseeable from,” the subject matter identified for broadening within two years. Id.
The problem with the PTO’s argument is that it is inconsistent with our predecessor court’s decision in Doll. Doll arose after the 1952 Patent Act. In Doll, the PTO argued that the statute required “no *1355 reissue patent [ ] be granted enlarging the scope of the claims of the original patent, unless said claims are applied for within two years of the grant of the original patent.” 419 F.2d at 927 (internal quotation marks omitted). Our predecessor court disagreed and concluded that section 251’s two-year time limit applied to the filing date only of the first broadening reissue application. Id. at 928. Accordingly, Doll reversed the PTO’s rejection of claims that were broader than those originally included with the appellant’s timely filed first broadening reissue application and were presented for the first time in an amendment filed outside of the two-year period. Id.
The PTO argues that, while Doll is binding, it is distinguishable. The PTO urges that the broadened claims challenged in Doll were “related to the subject matter covered by the claims identified and broadened within the two-year window,” and thus the public was adequately notified of Doll’s later broadening. Appellee’s Br. 31. The PTO argues that in contrast to Doll, the claims in dispute here “are directed to [an] unrelated, alternative embodiment that does not use a CPU or a ‘linked list of buffers’ ” like the subject matter of the first embodiment covered by the claims identified and broadened within the two-year window. Id. Thus, according to the PTO, “the public was not timely notified of Staats’ later broadening” in a manner consistent with section 251’s public notice requirement. Id. at 33.
The PTO’s argument is largely an argument that Doll should be limited to its specific facts. But the “necessary implications” of a ease’s holding are “of course not limited to the facts of that case.” Herb’s Welding, Inc. v. Gray, 470 U.S. 414, 442, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). Significantly, Doll itself made no distinction between related and unrelated claims. Doll simply held that section 251’s time limit clearly applied only to the filing date of the first broadening reissue application itself. 419 F.2d at 928. This court has acknowledged Doll’s holding that after a broadening reissue application has been filed within the two year statutory period, an applicant is “not barred from making further broadening changes” after the two year period “in the course of [the] prosecution of the reissue application.” In re Graff, 111 F.3d 874, 877 (Fed.Cir.1997); see also In re Fotland, 779 F.2d 31, 34 (Fed.Cir.1985). To be sure, subsequently filed continuation applications relate back to a previously filed application under 35 U.S.C. § 120 only if each successive continuation application was filed while its parent application was still pending. See Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc., 609 F.3d 1345, 1349 (Fed.Cir.2010). However, we see no basis for limiting Doll to situations where later broadened claims are related to, or are directed to the same embodiment as in the original application. The PTO’s approach is, moreover, unmanageable. Every claim must, by definition, be different in scope than the other claims of the patent, and it is difficult to distinguish one patent embodiment from another or to determine when a later claim is related to an earlier claim. A rule requiring that the new claims be related to the previously submitted claims, or be directed to the same embodiment, would be difficult to administer in a consistent and predictable way.
In short, this panel is bound by Doll. See S. Corp. v. United States, 690 F.2d 1368, 1370 (Fed.Cir.1982) (en banc) (adopting the decisions of the CCPA as binding precedent); In re Am. Fertility Soc’y, 188 F.3d 1341, 1347 (Fed.Cir.1999) (holding that an earlier precedential decision is binding precedent on later panels). If the PTO believes we should overrule Doll, that is a *1356 matter that must be presented to the en banc court.
Here, Staats’s first broadening reissue application was filed within section 251’s two-year limit. Under Doll, that is sufficient to satisfy the two-year requirement. We reverse the Board’s rejection of claims 12-32 as being filed outside of the two-year statutory limitation and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED

. Federico's commentary, first published in 1954, has previously been cited by this court as constituting "an invaluable insight into the intentions of the drafters of the Act.” Symbol Techs., Inc. v. Lemelson Med., 277 F.3d 1361, 1366 (Fed.Cir.2002).